UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| MASTEROBJECTS, INC., | No. C 11-02539 JSW (LB) |
| Plaintiff, | **ORDER REGARDING THE PARTIES' MAY 29, 2012 JOINT DISCOVERY LETTER BRIEF** |
| v. | |
| YAHOO! INC., | [Re: ECF No. 37] |
| Defendant. | |

## I. INTRODUCTION

In the above-captioned matter, Plaintiff MasterObjects, Inc. sues Defendant Yahoo! Inc. ("Yahoo!") for patent infringement. Before the court is MasterObjects's request for an order directing Yahoo! to de-designate as confidential many of the documents it has produced in discovery so far. Upon review of the parties joint discovery letter brief filed on May 29, 2012 and the arguments of counsel at the hearing on July 5, 2012, the court rules as follows.

## II. BACKGROUND

In July 2010, MasterObjects was issued a patent for a "System and Method for Utilizing Asynchronous Client Server Communications Objects" (U.S. Patent No. 7,752,326 or the "'326 Patent"). First Amended Complaint ("FAC"), ECF No. 28 at 4, ¶ 10.[1] This patent concerns

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

C 11-02539 JSW (LB)
ORDER

1 technology that "instantly" delivers information from a server computer to a computer user as they
2 type, without requiring that user to press the "return" key or make any other overt indication of
3 query submission. *Id.* at 4, ¶ 11. A continuation of the '326 patent, also titled "System and Method
4 for Utilizing Asynchronous Client Server Communications Objects," issued on November 15, 2011
5 as U.S. Patent No. 8,060,639 (the "'639 Patent"). *Id.* at 4, ¶ 12. On November 28, 2011, the United
6 States Patent and Trademark Office issued to MasterObjects a Notice of Allowance for U.S. Patent
7 Application No. 09/933,493 (the "'493 Application"), which relates to the '326 Patent and the '639
8 Patent. *Id*. at 4, ¶ 13. Hereinafter, the '326 Patent, the '639 Patent, and the '493 Application
9 collectively shall be referred to as the "Patents-in-Suit."

10 MasterObjects claims that Yahoo! has infringed the Patents-in-Suit through its "Search Assist"
11 and "Search Direct" products, which were launched on September 8, 2010. *Id.* at 5-7, ¶¶ 14-22. It
12 also alleges that Microsoft Corporation's Bing search engine infringes its patents and that Yahoo
13 licenses Bing to power its search results. *Id*. at 7-8, ¶¶ 23-25.

14 MasterObjects sued Yahoo! for patent infringement. FAC, ECF No. 28. Yahoo! answered
15 MasterObjects's First Amended Complaint and filed counterclaims against MasterObjects for a
16 declaratory judgment of non-infringement and invalidity. Answer and Counterclaims, ECF No. 29.
17 MasterObjects answered Yahoo!'s counterclaims. Answer, ECF No. 30. Currently, the parties are
18 submitting claim construction statements and responses, and the claim construction hearing is set for
19 July 24, 2012 before Judge White. 12/27/2012 Order, ECF No. 27. No protective order has yet
20 been entered in the case.

21 The parties now have a discovery dispute. 5/29/2012 Joint Letter, ECF No. 37. It involves the
22 large amount of documents that Yahoo! has produced as "Highly Confidential – Attorney's Eyes
23 Only" ("HC-AEO") and the problems that it has and/or may create. *See generally id*. Judge White
24 referred the dispute (and all other future discovery disputes) to a magistrate judge for resolution, and
25 the undersigned was assigned to the case. Referral Order, ECF No. 38. The court heard oral
26 argument from the parties on July 5, 2012. 7/5/2012 Minute Entry, ECF No. 45.

27 **III. DISCUSSION**

28 In this patent infringement action, Yahoo! has produced 679,212 pages (or over 170,000

1 documents) of information to MasterObjects. Of those 679,212 pages, Yahoo! designated all but
2 402 pages of them as HC-AEO. Some of these HC-AEO documents, MasterObjects says, have
3 nothing to do with litigation and simply are not confidential. MasterObjects argues that, as a result,
4 Yahoo! has improperly shifted the burden to review the production to make sure that the documents
5 have been appropriately designated, and the court agrees.

6 The court first notes that a protective order has not yet been entered in this patent infringement
7 case. In such a situation, this district's Patent Local Rule 2-2 Interim Model Protective Order
8 ("Interim Protective Order") governs discovery. *See* N.D. Cal. Pat. L.R. 2-2; Patent Local Rule 2-2
9 Interim Model Protective Order, *available at* http://cand.uscourts.gov/stipprotectorder. The Interim
10 Protective Order defines HC-AEO information or items as "extremely sensitive [information
11 (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection
12 under Federal Rule of Civil Procedure 26(c))], disclosure of which to another Party or Non-Party
13 would create a substantial risk of serious harm that could not be avoided by less restrictive means."
14 Interim Protective Order § 2.8; *see also id.*, § 2.2. The Interim Protective Order also provides the
15 following guidance regarding the designation of material for protection:

16     5. DESIGNATING PROTECTED MATERIAL

17     5.1 Exercise of Restraint and Care in Designating Material for Protection. Each
Party or Non-Party that designates information or items for protection under this
18 Order must take care to limit any such designation to specific material that qualifies
under the appropriate standards. To the extent it is practical to do so, the Designating
19 Party must designate for protection only those parts of material, documents, items, or
oral or written communications that qualify - so that other portions of the material,
20 documents, items, or communications for which protection is not warranted are not
swept unjustifiably within the ambit of this Order.
21
    Mass, indiscriminate, or routinized designations are prohibited. Designations that
22 are shown to be clearly unjustified or that have been made for an improper purpose
(e.g., to unnecessarily encumber or retard the case development process or to impose
23 unnecessary expenses and burdens on other parties) expose the Designating Party to
sanctions.
24
    If it comes to a Designating Party's attention that information or items that it
25 designated for protection do not qualify for protection at all or do not qualify for the
level of protection initially asserted, that Designating Party must promptly notify all
26 other Parties that it is withdrawing the mistaken designation.

27 *Id.*, § 5.1

28     The upshot of the Interim Protective Order's definition and HC-AEO material and its guidance

C 11-02539 JSW (LB)
ORDER
3

regarding the designation of material for protection is that the designating party must be careful to designate as HC-AEO only information that actually is extremely sensitive; it places on the designating party the burden to make sure that, on the whole, only extremely sensitive information receives the high level of protection that the Interim Protective Order affords.

Here, Yahoo! has not met that burden. As its counsel described at the July 5, 2012 hearing, the parties met and conferred to discuss the locations and custodians of relevant information. Certain locations and custodians were decided upon, and Yahoo!'s counsel collected certain repositories of information from or related to them. Yahoo!'s counsel then loaded the information into a database and ran certain privilege-related search terms against the information and conducted a detailed review of the resulting hits. Once the potentially privileged documents were reviewed, Yahoo!'s counsel ran certain merits-related search terms against the remaining, unreviewed information and conducted a "spot review" of the resulting hits—presumably the 679,212 pages of documents mentioned above. Based on this spot review, Yahoo!'s counsel designated virtually all of these documents as HC-AEO, and then produced them to MasterObjects.

Collecting, searching, reviewing, designating, and, finally, producing documents in this way is not impermissible *per se*; with the receiving party's consent (such as through a stipulation that allows both sides to produce discovery in this way), this can be an efficient way illuminate the relevant merits and damages landscapes in actions where such knowledge can lead to successful settlement at an early stage. But where the receiving party has not consented to such an approach—as it appears is the case is here—the designating party must do more.

Yahoo!'s arguments in support of its methods are unavailing. For instance, Yahoo! states that it is willing to meet and confer to de-designate any non-confidential documents that MasterObjects's counsel wishes to file or show MasterObjects's Board of Directors or employees, but this unreasonably asks MasterObjects's counsel to give Yahoo!'s counsel insight into which documents MasterObjects's counsel may believe are important and may place MasterObjects's counsel in the untenable position of either revealing its strategy or moving forward without the legitimate input from its client. Yahoo! also points out that MasterObjects's production, too, includes documents designated as "confidential" but which clearly are not. To be sure, if MasterObjects did designate as

1  confidential "a picture of a cake," as Yahoo! states, the court doubts that the confidential designation
2  is warranted. But no production is perfect, and some documents may be designated in error. Section
3  5.1 of the Interim Protective Order has a process for resolving these kinds of errors, though, and that
4  process does not conflict with its requirement that the designating party take care of designate
5  documents appropriately.

6  Yahoo! voices concern that if its previous efforts are found to be insufficient, it will be forced to
7  conduct a costly page-by-page review of an enormous number of documents. The court
8  acknowledges this legitimate concern, but it is not ruling that Yahoo! must conduct a page-by-page
9  review of the entire production; the choice is not a binary one. Perhaps the spot checks need to be
10 more frequent, or perhaps documents that contain certain highly-confidential search terms can be
11 produced in the method described above, while other documents that contain slightly-less
12 confidential search terms need to be reviewed more closely. Other possibilities likely exist as well.
13 For example, Yahoo! described a proxy procedure that it used to identify privileged documents.

14 In sum, the court finds that Yahoo!'s current process for designating documents as HC-AEO
15 does not comport with the requirements of the applicable Interim Protective Order. Blanket
16 designations like this one are not acceptable.

### IV. CONCLUSION

18 The court is not requiring Yahoo!, at least on this record, to conduct a perfect, page-by-page
19 review and bear the entire cost of doing so. But Yahoo! cannot simply designate as HC-AEO a mass
20 of documents without taking care to minimize the risk that many documents may be wrongly
21 designated. It needs to come up with a process to more accurately designate HC-AEO documents.
22 If MasterObjects does not like that process, the parties should meet and confer to to reach a
23 workable solution, but the court expects that Yahoo! knows how to do the job and will do it next
24 time.

**IT IS SO ORDERED.**

Dated: July 5, 2012

_____
LAUREL BEELER
United States Magistrate Judge

C 11-02539 JSW (LB)
ORDER
5