IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASTEROBJECTS, INC., | |
| Plaintiff, | No. C 11-02539 JSW |
| v. | |
| YAHOO! INC., | **TENTATIVE RULINGS AND QUESTIONS RE CLAIM CONSTRUCTION** |
| Defendant. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON JULY 24, 2012, AT 1:30 p.m.:

The Court has reviewed the parties' briefs and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority. The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

The parties shall each have 60 minutes to present their respective arguments on claim construction. The Court provides its tentative constructions of the disputed terms.

**1.     "Asynchronous connection"**

The term "asynchronous connection" appears in Claims 1 and 18 of the '326 Patent, Claims 1 and 13 of the '639 Patent, and Claim 1 of the '529 Patent.

MasterObjects argues that the term "asynchronous connection" must be construed to mean "A connection that allows one side of the communication to communicate at the same time the other side is also communicating within a session." (Parties' Joint Claim Construction and Pre-hearing Statement ("Statement") at 2.)  Yahoo!, on the other hand, argues that the term must be construed to mean "A connection that allows both the client and server to initiate communications at any moment in time." (*Id.*)

It appears that MasterObjects argues the key dispute is whether the communications must be within a session ('529 Patent at 31:50-57) and Yahoo!'s primary contention is that either party may initiate the communications, *i.e.*, the communications are both asynchronous and bi-directional ('326 Patent at 14:48-50).  Can the Court resolve both disputes simultaneously, by incorporating both in its construction?

The Court **tentatively** adopts the following construction:  "A connection that allows one side of the communication to initiate communications at the same time as the other side at any moment in time within a session."

**2. "Communication protocol"**

The term "communication protocol" appears in Claims 1 and 18 of the '326 Patent, Claims 1 and 13 of the '639 Patent, and Claims 1, 44, and 45 of the '529 Patent.

MasterObjects argues that the term "communication protocol" must be construed to mean "A set of rules that enable computers to exchange messages with each other."  (*Id.* at 2.) Yahoo!, on the other hand, argues that the term must be construed to mean "A set of rules or standards designed to enable computers to connect with one another and to exchange information and that is optimized for sending single characters from a client to a server and lists of strings from the server to the client."  (*Id.*)

The key dispute between the parties is whether the protocol must be optimized for sending single characters from a client to a server and lists of strings from the server to the

2

1  client. As disclosed in the specifications, the "invention" or "present invention," and not
2  merely a preferred embodiment, is defined as including "a Server, that handles requests for
3  information from clients, and a communication protocol that is optimized for sending characters
4  from a Client to the Server, and lists of strings from the Server to the Client." ('326 Patent at
5  14:14-18; '529 Patent at 11:55-59; '639 Patent at 13:58-62.)

6  How does MasterObjects contend that the statements describing "the invention" or "the
7  present invention," and not a specific embodiment, do not limit the scope of the claim? *See*
8  *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1353 (Fed. Cir. 2010) (holding that a
9  reference to "'the present invention' strongly suggests that the claimed" invention is limited by
10 the statement).

11 The Court **tentatively** adopts the following construction: "A set of rules that enable
12 computers to exchange messages with each other and that is optimized for sending single
13 characters from a client to a server and lists of strings from the server to the client."

14 **3.    "Content-based cache/query and result cache"**

15 The terms "content-based cache/query and result cache" appear in Claims 1, 44, and 45
16 of the '529 Patent and Claims 1 and 13 of the '639 Patent. The parties agree that the terms
17 should be given the same construction.

18 MasterObjects argues that the terms "content-based cache/query and result cache" must
19 be construed to mean "A cache which stores previous queries and content or other information
20 returned in response to previous queries." (*Id.* at 2.) Yahoo!, on the other hand, argues that the
21 term must be construed to mean "A persistent store of queries and corresponding result sets
22 executed by a content engine for a specific content channel, thus improving performance on
23 recurring queries and limiting the load imposed on content engines. Memory that stores an
24 index file that aids in retrieval of queries and result sets, but does not store those queries and
25 result sets, is not a cache." (*Id.*)

26 The key dispute between the parties is whether to import the language from the glossary
27 and to import the purpose of the caching into the definition of the term (and the final sentence
28 describing what a cache is not). There is no support for importing the purpose of the term (or

3

what it is not), as the specific term at issue is defined. However, here, the patentee thus "acted as his own lexicographer," and clearly and precisely "set forth a definition of the disputed claim term in either the specification or prosecution history." *CCS Fitness*, *Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Accordingly, the Court must defer to that definition.

The Court **tentatively** adopts one of the following two constructions:

"A persistent store of queries and corresponding result sets executed by a content engine for a specific content channel."

Because the Court finds this definition includes terms which lack specific definition and takes from the claim language ('529 Patent at 31:59-61), the Court may adopt the following construction:

"A persistent store of queries and corresponding result sets executed by the system."

What is MasterObjects' best argument that either such construction is improper?

### 4. "Unified query and result cache/unified query cache"

The terms "unified query and result cache/unified query cache" appear in Claims 1 and 18 of the '326 Patent.

MasterObjects argues that the terms "unified query and result cache/unified query cache" must be construed to mean "A cache for a plurality of clients which stores previous queries or content or other information returned to the previous inquiries." (Statement at 3.) Yahoo!, on the other hand, argues that the term must be construed to mean "A persistent store of queries and corresponding result sets, common to all users, executed by a content engine for a specific content channel, thus improving performance on recurring queries and limiting the load imposed on content engines. Memory that stores an index file that aids in retrieval of queries and result sets, but does not store those queries and result sets, is not a cache." (*Id.*)

The key dispute between the parties – one not resolved by the previous construction – is the construction of "unified" to mean either common "for a plurality of clients" or "common to all users."

What is the material dispute between the parties? Is the dispute between *some* users and *all* users? How does MasterObjects' proposed construction not make the remaining portion of

4

the term duplicative or merely surplusage? Is the term defined in the glossary section or what precedes that section in the patent? Is there a difference between these two sections of the patent?

The Court **tentatively** adopts the following construction: "A persistent store of queries and corresponding result sets, common to all users, executed by the system [OR by a content engine for a specific content channel]."

### 5. "Content source(s)"

The term "content source(s)" appears in Claim 1 of the '326 Patent and Claims 1, 44, and 45 of the '529 Patent.

MasterObjects argues that the term "content source(s)" must be construed to mean "A server computer that provides information." (Statement at 3.) Yahoo!, on the other hand, argues that the term must be construed to mean "A server computer that provides data to a third-party application that is capable of performing string-based queries and returning string-formatted answers to the system by accessing its own database or by querying other information systems." (*Id.*)

The key dispute between the parties is whether to import the limitation from the glossary definitions to include the content engine definition, which requires that it makes its data available through a third-party application that is capable of processing string-based queries and returning string-formatted answers. The glossary in the '326 Patent defines "content source" to be "A server computer that provides the data that is accessed by the [specific embodiment] system." However, Yahoo! has picked up the next sentence in the glossary stating that "The content source makes its data available through a content engine." ('326 Patent at 10:23-26.) The explanation of the working of the specific embodiment within the system does not necessarily form part of the definition of the system's parts and Yahoo!'s proposed construction does not adopt all of the language from the glossary, only a selected portion. Accordingly, the Court is persuaded that the first sentence of the glossary definition suffices.

The Court **tentatively** adopts the following construction: "A server computer that provides the data that is accessed by the system."

5

What are the parties' responses to that proposed construction?

**6.    "Session/user session"**

The terms "session/user session" appear in Claims 1 and 18 of the '326 Patent and Claims 1 and 13 of the '639 Patent.

MasterObjects argues that the terms "session/user session" must be construed to mean "A related set of communications between a client and a server as the user enters a particular search query by entering consecutive characters." (Statement at 3-4.) Yahoo!, on the other hand, argues that the term must be construed to mean "A state maintained between a client and a single server in which the server recognizes when subsequent requests originate from the same user such that information about the user's past queries is required to process the current request." (*Id.*)

The Court **tentatively** adopts the following construction: "A relationship maintained between a client and a server in which the server recognizes when the user enters a particular search query by entering consecutive characters."

What are the parties' responses to that proposed construction?

**7.    Claims of Indefiniteness**

The term "increasingly appropriate content or search criteria" appears in Claim 18 of the '326 Patent and Claims 44 and 45 of the '529 Patent. The term "increasingly relevant content" appears in Claims 1 and 18 of the '326 Patent and Claims 1 and 13 of the '639 Patent. MasterObjects argues these terms should be given its plain meaning. Yahoo!, on the other hand, argues that the terms are not amenable to construction and the claims containing them are invalid as indefinite.

Why should the Court address the question of indefiniteness at the *Markman* proceeding and not at summary judgment? *See, e.g., Intergraph Hardware Techs. Co. v. Toshiba Corp.,* 508 F. Supp. 2d 752, 773 n.3 (N.D. Cal. 2007) ("[The] indefiniteness argument is inappropriate at the claim construction stage."); *Pharmastem Therapeutics, Inc. v. Viacell, Inc.,* 2003 WL 124149, at *1 n.1 (D. Del. Jan. 13, 2003) ("[T]he court will not address the defendants'

///

6

indefiniteness argument at [the *Markman* stage].").

**IT IS SO ORDERED.**

Dated: July 19, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE