PAGES 1 – 66

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE

MASTEROBJECTS, INC.,          )
                                  )
          PLAINTIFF,      )
                                  )
  VS.                       ) NO. C 11–02539 JSW
                                  )
YAHOO! INC.,               )
                                  ) SAN FRANCISCO, CALIFORNIA
          DEFENDANT.    ) TUESDAY
                                  ) JULY 24, 2012
_____) 1:30 O'CLOCK P.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          HOSIE RICE LLP
                          TRANSAMERICA PYRAMID, 34TH FLOOR
                          600 MONTGOMERY STREET
                          SAN FRANCISCO, CALIFORNIA 94111
                **BY: SPENCER HOSIE, ESQUIRE**

**FOR DEFENDANT:**          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                          50 CALIFORNIA STREET
                          22ND FLOOR
                          SAN FRANCISCO, CALIFORNIA 94111
                          875-6700
                **BY: MATTHEW D. CANNON, ESQUIRE**
                **KEVIN SMITH, ESQUIRE**

*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
*OFFICIAL REPORTER - US DISTRICT COURT*
*COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

```
 1   JULY 24, 2012                          1:30 O'CLOCK  P.M.

 2

 3                    P R O C E E D I N G S

 4        THE COURT:  CALL THE CASE.

 5        THE CLERK:  CALLING CASE NUMBER C11-2539,

 6   MASTEROBJECTS, INC. VERSUS YAHOO!, INC.

 7      COUNSEL, PLEASE STEP FORWARD TO THE PODIUMS, AND STATE

 8   YOUR APPEARANCES.

 9        MR. HOSIE:  GOOD AFTERNOON, YOUR HONOR.  SPENCER

10   HOSIE FOR THE PLAINTIFF MASTEROBJECTS.

11        THE COURT:  GOOD AFTERNOON.

12        MR. SMITH:  GOOD AFTERNOON.  KEVIN SMITH ON BEHALF OF

13   YAHOO!  AND ALSO WITH ME WILL BE MY ASSOCIATE, MATTHEW CANNON.

14        THE COURT:  ALL RIGHT.  MR. HOSIE, HAVE YOU RECEIVED

15   THE COURT'S TENTATIVE RULING AND THE QUESTIONS?

16        MR. HOSIE:  NO.  WE'VE READ IT AND FOUND IT VERY

17   HELPFUL, YOUR HONOR.

18        THE COURT:  HAVE YOU?

19        MR. SMITH:  I HAVE READ IT AND FOUND IT HELPFUL ALSO.

20        THE COURT:  ALL RIGHT.  SO THE WAY I WOULD LIKE TO

21   PROCEED, OBVIOUSLY, AS I MENTIONED DURING THE TUTORIAL, IS JUST

22   TO GO THROUGH EACH OF THE TERMS AND, SPECIFICALLY, THE COURT'S

23   PROPOSED OR TENTATIVE CONSTRUCTION AND BASICALLY TO TELL THE

24   COURT WHY IT'S EITHER RIGHT OR WRONG OR IN-BETWEEN.

25      AND BECAUSE I THINK WHAT I'VE ATTEMPTED TO DO IS GIVE YOU
```

1    MY INCLINATION BASED UPON THE PAPERS AND MY UNDERSTANDING OF

2    THE LAW AS PRESENTED BY THE PARTIES AND THE COURT FOUND ON ITS

3    OWN. AND THIS IS THE DISTILLATION.  AND YOU JUST NEED TO TELL

4    ME WHY I'M RIGHT OR WRONG, AND WE'LL GO FROM THERE.

5        SO WHAT I'D LIKE TO DO IN EACH CASE IS START WITH THE

6    PATENTEE, EVEN THOUGH SOME OF THESE ARGUABLY FAVOR ONE SIDE OR

7    THE OTHER BECAUSE IT'S EITHER EXACTLY WHAT YOU HAVE REQUESTED

8    OR PRETTY CLOSE TO IT.  BUT I THINK I LIKE TO START WITH THE

9    PATENTEE, AND THEN MOVE FORWARD WITH THE RESPONSE AND GO

10   FORWARD UNTIL WE'VE EXHAUSTED THAT PARTICULAR TERM.

11       SO YOU HAVE THE FLOOR NOR ASYNCHRONOUS CONNECTION AND THE

12   COURT'S TENTATIVE CONSTRUCTION.

13           MR. HOSIE:  IF I MAY, I HAVE PLACED OR HAD PLACED

14   THREE BINDERS FOR THE COURT'S CONVENIENCE.  IN THE BINDERS ARE

15   TAB BRACKETS.  I WILL REFER TO EACH BRACKET BY A TAB NUMBER SO

16   THE REFERENCES ARE CLEAR.

17           THE COURT:  ALL RIGHT.

18           MR. HOSIE:  AND WE ALSO HAVE THEM LOADED

19   ELECTRONICALLY SO THEY SHOULD BE ON THE MONITORS AS I SPEAK.

20           THE COURT:  ALL RIGHT.

21           MR. HOSIE:  ASYNCHRONOUS CONNECTION, YOUR HONOR, WE

22   THINK THE COURT'S CONSTRUCTION IS CORRECT.  IT CAPTURES THE

23   NON-BLOCKING ASPECT OF ASYNCHRONOUS COMMUNICATION.  THAT IS

24   IT'S A TELEPHONE, NOT A WALKIE TALKIE.

25       IT IMPORTANTLY CAPTURES THAT WITHIN THE CONCEPT OF A

1    SESSION.  THIS IS ALL ABOUT SEARCH.  AND SOMEBODY HAS TO SIT

2    DOWN AND START A SEARCH SESSION.  YOU'RE ON YOUR COMPUTER AND

3    YOU ARE LOOKING FOR SOMETHING.  SO YOU HIT A CHARACTER THAT

4    INITIATES A CONNECTION.  AND IT IS AN ASYNCHRONOUS CONNECTION,

5    BECAUSE ONCE YOU'RE WITHIN A SESSION THE TWO ENDS CAN

6    COMMUNICATE EVEN AT THE SAME TIME.

7        TAB ONE, YOUR HONOR, IS THE LANGUAGE OF THE CLAIMS ITSELF.

8    '529, CLAIM ONE, IT EXPLICITLY SAYS THAT IT'S ASYNCHRONOUS

9    WITHIN A SESSION. THAT'S IN RED.

10        TAB TWO TAKES ME TO YAHOO!'S ARGUMENT. NOW, WHAT DOES

11    YAHOO! SAY?  YOUR HONOR, AS THE COURT'S OBSERVED IN ITS

12    TENTATIVE, IT BOILS DOWN TO THREE WORDS: "WITHIN A SESSION."

13        THEY WANT A CONSTRUCTION WHERE THE SERVER WILLY-NILLY AT

14    ANY TIME AND EXTRINSIC TO WHETHER THERE'S A SEARCH SESSION

15    UNDERWAY CAN SUDDENLY SEND YOU SERVER SPAM:

16            "HI, WANT SOME SEARCH RESULTS?"

17        YOU'RE SITTING AT YOUR COMPUTER WATCHING A VIDEO, AND

18    SUDDENLY YOU GET:

19            "WANT SOME SEARCH RESULTS?"

20        THAT IS NOT HOW SEARCH WORKS.  WHAT IS YAHOO!'S SUPPORT

21    FOR THIS?  AGAIN, NOT A PEJORATIVE OR SERVER SPAM CONSTRUCTION.

22        IT QUOTES -- AND THIS IS TAB TWO, YOUR HONOR -- ONE

23    SPECIFIC EMBODIMENT.  AND I QUOTE IT HERE IN THIS GRAPHIC.  THE

24    LANGUAGE STARTS:

25            "IN ACCORDANCE WITH ONE EMBODIMENT OF THE INVENTION,"

 1  ET CETERA. IN THIS ONE EMBODIMENT THE SYSTEM TRACKS THE USER'S

 2  HISTORY.

 3      SO, YOUR HONOR, IT WOULD KNOW WHAT YOU DID TODAY.  IT

 4  WOULD KNOW WHAT YOU LOOKED UP LAST WEEK.  IT WOULD KNOW WHAT

 5  YOU LOOKED AT LAST YEAR. AND IT TRACKS YOUR USER HISTORY SO IT

 6  KNOWS WHO YOU ARE AND WHAT YOU'VE LOOKED AT IN THE PAST, AND IT

 7  USES THAT INFORMATION TO INFORM ITS COMMUNICATIONS WITH YOU.

 8      IN THAT CONTEXT, SINCE IN THIS EMBODIMENT IT KNOWS WHO YOU

 9  ARE AND KNOWS WHAT YOU'VE DONE IN THE PAST HISTORICALLY, I MEAN

10  I DON'T MEAN WITHIN A SEARCH SESSION, I MEAN LAST WEEK.

11      SINCE IT KNOWS WHAT YOU'VE DONE IN THE PAST, IT CAN SAY:

12          "YOU KNOW WHAT?  WE'RE GOING TO PUSH SOME INFORMATION

13      TO THE HONORABLE JEFFREY WHITE, BECAUSE HE WAS INTERESTED

14      IN THIS BEFORE."

15      AND THAT'S WHAT THEY RELY ON. BUT THAT, YOUR HONOR, IS A

16  PREFERRED EMBODIMENT AND NOTHING MORE THAN A PREFERRED

17  EMBODIMENT. THEY ARE READING THIS VERY SPECIFIC EMBODIMENT WITH

18  THIS RICH CLIENT HISTORY INTO THE CLAIMS, AND THAT VIOLATES ALL

19  THE CANONS OF CLAIM CONSTRUCTION.

20      THE NEXT GRAPHIC, YOUR HONOR, WHICH IS THREE, THE

21  PROSECUTION HISTORY. THE PROSECUTION HISTORY IS CONSISTENT WITH

22  EVERYTHING I'VE JUST SAID.

23      THIS IS A PAGE.  IT'S PAGE 11 FROM THE PROSECUTION

24  HISTORY, THE OFFICE RESPONSE, EXHIBIT D TO YAHOO!'S BRIEF.  AND

25  I'VE JUST TAKEN IT AND HIGHLIGHTED WITHIN THE SAME SESSION

1    LANGUAGE.

2        AGAIN, IT'S HOW SEARCH WORKS. YOU SIT DOWN.  YOU HIT A

3    CHARACTER. THAT INITIATES THE COMMUNICATION. IT'S AN

4    ASYNCHRONOUS COMMUNICATION.  AND IN THIS PATENT THE KEY IS ONCE

5    YOU'RE WITHIN A SESSION, AND ONCE YOU HAVE THIS CONNECTION,

6    THEN IT'S ASYNCHRONOUS. IT IS A TELEPHONE. WE CAN TALK AT THE

7    SAME TIME, EVEN OVER ONE ANOTHER.

8        IT'S NOT A WALKIE TALKIE.

9        ROGER OVER OUT.

10       THANK YOU.

11           **THE COURT:**  COUNSEL?

12           **MR. SMITH:**  THANK YOU, YOUR HONOR. I ALSO HAVE SOME

13   SLIDES I PREPARED, SO I BELIEVE YOU HAVE A COUNTER COPY, AND

14   ALSO HAVE IT ON THE SCREEN.

15       I HAVE AN INTRODUCTION, BUT I'M GOING TO SKIP THROUGH THAT

16   AND GO STRAIGHT TO THE ASYNCHRONOUS CONNECTION TERM LEADING

17   RIGHT INTO IT.

18       AS THE COURT'S AWARE THE CONSTRUCTION YOUR HONOR HAS

19   OFFERED IS A CONNECTION THAT ALLOWS ONE SIDE OF THE

20   COMMUNICATION TO INITIATE COMMUNICATIONS AT THE SAME TIME AS

21   THE OTHER SIDE AT ANY MOMENT IN TIME WITHIN A SESSION.

22       AND YAHOO! HAS TWO BASIC OBJECTIONS TO THIS. ONE IS -- I

23   DON'T NECESSARILY BELIEVE I DISAGREE WITH THE CONSTRUCTION.

24       THE FIRST ISSUE, I THINK, IS JUST AN ISSUE OF AMBIGUITY

25   WITH THE COURT'S CONSTRUCTION. I'M NOT SURE THAT THE COURT

1    ACTUALLY DISAGREES WITH THIS POSITION.  BUT THE COURT'S

2    CONSTRUCTION USE OF THE PHRASE "ONE SIDE" LEAVES IT SOMEWHAT

3    UNCLEAR, ARGUABLY, ABOUT WHETHER BOTH THE CLIENT AND THE SERVER

4    HAVE TO BE ABLE TO INITIATE THE COMMUNICATION.

5        THE PROSECUTION HISTORY STATES THAT BOTH SIDES HAVE TO BE

6    ABLE TO.  AND I THINK YOUR HONOR PERHAPS MEANT THAT SO, FOR

7    EXAMPLE, IF YOU HAD A SYSTEM WHERE ONLY A CLIENT COULD INITIATE

8    COMMUNICATION OR ONLY A SERVER COULD INITIATE, IT'S UNCLEAR

9    WHETHER THAT WOULD FALL WITHIN THIS CONSTRUCTION.

10       THE SECOND ISSUE IS ALSO ONE OF AMBIGUITY.  THAT IS, AS I

11   READ THAT CONSTRUCTION IT SEEMS TO SUGGEST TO ME THAT THE

12   CLIENT AND THE SERVER HAVE TO BE ABLE TO INITIATE COMMUNICATION

13   AT THE EXACT SAME INSTANT IN TIME WHEN YOU SAY "AT THE SAME

14   MOMENT."

15       I BELIEVE THE JURY JUST MIGHT BE A LITTLE BIT CONFUSED BY

16   THAT.  SO WHAT I'VE PROPOSED HERE IS A SLIGHTLY MODIFIED

17   CONSTRUCTION WHICH I THINK HAS THE SAME MEANING AS YOUR HONOR'S

18   CONSTRUCTION.  AND I THINK IT IS ACTUALLY CONSISTENT WITH WHAT

19   MR. HOSIE HAS JUST ARGUED FOR, WHICH IS A CONNECTION THAT

20   ALLOWS EITHER SIDE OF THE COMMUNICATION TO INITIATE

21   COMMUNICATIONS AT ANY MOMENT IN TIME WITHIN A SESSION.

22       SO IT INCORPORATES, ALTHOUGH I DON'T BELIEVE "WITHIN A

23   SESSION" IS REQUIRED BY THE INTRINSIC EVIDENCE, IT DOES

24   INCORPORATE MR. HOSIE'S IDEA.

25       SO HOW DO WE GET TO THAT CONSTRUCTION?  FIRST OF ALL, THE

1    '529 PATENT BEGINS WITH A DISCUSSION OF THE BACKGROUND OF THE

2    PRIOR ART.  AND IT CRITICIZES THE PRIOR ART AND SAYS HOW IT'S

3    IMPROVED UPON IT.

4         AND ONE THING THE BACKGROUND STATES IS THAT THE PRIOR ART

5    DOES NOT ALLOW FOR THE SERVER TO AUTOMATICALLY UPDATE THE

6    CLIENT DISPLAY ONCE THE SERVER DATA CHANGES.

7         AND SO MASTEROBJECTS' WAS THE INVENTION IS DESIGNED TO

8    REMEDY THAT DEFICIENCY. AND THE WAY IT DOES THAT IS BY ALLOWING

9    THE SERVER TO INITIATE THE COMMUNICATION BY SENDING AN

10   AUTOMATIC UPDATE.  THAT IS NOT AN UPDATE THAT IS IN RESPONSE TO

11   A CLIENT QUERY, JUST AN UPDATE OF THE RESULTS THAT HAVE

12   PREVIOUSLY BEEN SENT.

13        SO THAT MAKES CLEAR THAT THE SERVER HAS TO BE ABLE TO

14   INITIATE --

15        **THE COURT:**  YOU JUST LOST ME THERE.  WHY WOULD IT BE

16   UPDATING SOMETHING?  IN RESPONSE TO WHAT STIMULUS WOULD IT BE

17   UPDATING?

18        **MR. SMITH:**  RIGHT.  IN THIS DESCRIPTION CLEARLY, YOUR

19   HONOR, THE CLIENT HAD ORIGINALLY SENT SOME TYPE OF QUERY.  THE

20   SERVER SENT RESULTS IN THE PAST.  AND THEN SOMETIME LATER --

21   COULD BE ANY TIME LATER -- THE SERVER, THE DATA ON THE SERVER

22   CHANGES.  THE DATABASE ON THE SERVER GETS UPDATED, AND THE

23   SERVER SAYS:

24        "OH, THERE'S STILL DATA ON THE CLIENT. I WILL

25        INITIATE A COMMUNICATION AND SEND AN UPDATE."

1      **THE COURT:**  SO AN EXAMPLE WOULD BE -- I BELIEVE

2   MASTEROBJECTS USED MADISON SQUARE GARDEN.  IF THE NAME WAS

3   CHANGED TO -- YOU KNOW, TO THE PEPSI CENTER THE SERVER WOULD BE

4   PRESUMABLY UPDATED TO SAY "PEPSI CENTER" RATHER THAN "MADISON

5   SQUARE GARDEN."

6      **MR. SMITH:**  THAT COULD BE AN EXAMPLE. I THINK A

7   CLEARER EXAMPLE MIGHT BE IF NEW DATA ON A WEB PAGE ABOUT

8   MADISON SQUARE GARDENS WAS ADDED AND THAT PAGE HAD PREVIOUSLY

9   BEEN SENT, YOU MIGHT SEND THE CHANGE.

10      **THE COURT:**  I UNDERSTAND.

11      **MR. SMITH:**  THIS CONSTRUCTION IS ALSO SUPPORTED BY

12   THE PROSECUTION HISTORY. MR. HOSIE DISCUSSED WHAT HE CONTENDS

13   THAT WE RELY ON IN THE INTRINSIC EVIDENCE.  I CONTEND THAT WE

14   ACTUALLY DO NOT RELY ON THAT STATEMENT. MR. HOSIE SAYS WE DO.

15      THIS IS ACTUALLY THE STATEMENT THAT YAHOO! RELIES ON:

16          "DURING PROSECUTION OF THE '529 PATENT, MASTEROBJECTS

17          RECEIVED A REJECTION OF ITS PATENT IN LIGHT OF PRIOR ART

18          REFERENCE CALLED PURCELL."

19      MASTEROBJECTS ARGUED THAT PURCELL DID NOT INVALIDATE

20      THE PATENT BECAUSE PURCELL DISCLOSED A TRADITIONAL

21   SYNCHRONOUS MEANS OF REQUESTING INFORMATION.

22      AND THEN, IN THAT SAME RESPONSE MASTEROBJECTS STATED ABOUT

23   ITS INVENTION:

24          "FURTHERMORE, SINCE THE SYSTEM IS ASYNCHRONOUS,

25          BOTH THE CLIENT AND THE SERVER CAN INITIATE COMMUNICATIONS

1    AT ANY MOMENT IN TIME."

2        SO HERE'S THE CLEAR DEFINITION WHAT THEY MEANT BY

3    "ASYNCHRONOUS" IN RELATION TO PURCELL.

4            **THE COURT:**  SO THEN YOU AGREE THAT "ANY MOMENT IN

5    TIME" MEANS ANY MOMENT IN TIME WITHIN A SESSION.

6            **MR. SMITH:**  I BELIEVE THIS IS A CLEAR DEFINITION.  IT

7    DOES NOT REQUIRE "WITHIN A SESSION," BUT WE HAVE OFFERED THIS

8    ALTERNATIVE CONSTRUCTION WHICH IS A COMPROMISE, WHICH I BELIEVE

9    IS MORE CORRECT THAN THE COURT'S CURRENT CONSTRUCTION.

10           **THE COURT:**  OKAY.

11           **MR. SMITH:**  SO THAT'S ALL, UNLESS YOUR HONOR HAS

12   QUESTIONS.

13           **THE COURT:**  THAT'S IT.

14       I'LL GIVE YOU A CHANCE TO REPLY. DO YOU ACCEPT THEIR

15   PROPOSAL?

16           **MR. HOSIE:**  WE APPRECIATE THAT THEY HAVE INCLUDED

17   "WITHIN A SESSION." WE THINK THE COURT'S CONSTRUCTION IS MORE

18   CLEAR BECAUSE IT CAPTURES THE NON-BLOCKING ASPECT.

19           **THE COURT:**  WELL, WHAT ABOUT COUNSEL -- I MEAN,

20   COUNSEL MAKES A GOOD POINT AND ONE -- BECAUSE EVEN IN

21   YOUR -- NOT "EVEN" BUT IN MASTEROBJECTS' PROPOSAL YOU USE THE

22   CONNECTION THAT ALLOWS ONE SIDE OF THE COMMUNICATION TO

23   COMMUNICATE AT THE SAME TIME WITH THE OTHER SIDE.

24       AND THE QUESTION IS WHETHER IT IS CLEAR IN THE

25   CONSTRUCTION WHAT'S A "SIDE" MEANS, WHETHER IT'S THE SERVER AND

1  WHETHER THAT NEEDS THE KIND OF CLARIFICATION THAT YAHOO! IS

2  PROPOSING.

3       **MR. HOSIE:**  I THINK EITHER SIDE IS CLEAR, BUT WE

4  CERTAINLY DON'T HAVE OBJECTIONS TO CALLING IT A "CLIENT

5  SERVER."

6       THE PROBLEM IS THE COURT'S CONSTRUCTION CAPTURES THE

7  NON-BLOCKING ASPECT. THEY CAN DO IT AT THE SAME TIME.  IT'S

8  TELEPHONE.

9       THEIR CONSTRUCTION ISN'T QUITE CLEAR.  THEY HAVE SORT OF

10  CAREFULLY CRAFTED THE NON-BLOCKING ASPECT OUT OF THEIR PROPOSED

11  CONSTRUCTION, THE ONE THEY PROPOSED TODAY.

12       SO WE THINK THE COURT'S CONSTRUCTION IS MORE CORRECT.

13       **THE COURT:**  ALL RIGHT.  ANYTHING MORE YOU WANT TO SAY

14  ON THAT POINT?

15       **MR. SMITH:**  I JUST -- THE ONLY THING I WOULD ADD IS I

16  DON'T BELIEVE OUR CONSTRUCTION OMITS THE NON-BLOCKING ASPECT

17  SINCE THEY BOTH INITIATE THE "ANY MOMENT IN TIME," WHICH I

18  THINK IS WHAT IS MEANT.

19       **THE COURT:**  WELL, THE PARTIES AGREE ON THE CONCEPT,

20  AT LEAST, OF THE FUNCTIONALITY.  IT'S JUST THE WAY TO EXPRESS

21  IT, CORRECT?

22       **MR. SMITH:**  I THINK THAT'S LIKELY CORRECT, YOUR

23  HONOR.

24       **THE COURT:**  "LIKELY CORRECT"?  IT EITHER IS OR ISN'T.

25       I MEAN --

1      **MR. SMITH:**  IT'S THINK IT'S CORRECT, YES.

2      **THE COURT:**  ALL RIGHT.  I DON'T WANT YOU TO TELL ME

3  "IT'S LIKELY CORRECT," AND THEN YOU TELL THE FEDERAL CIRCUIT

4  SOMETHING ELSE, AND WE'RE BACK HERE DOING THE SAME THING OVER

5  AGAIN IN A COUPLE OF YEARS.

6      BUT, ANYWAY, LET'S MOVE ON TO "COMMUNICATION PROTOCOL,"

7  MR. HOSIE.

8      **MR. HOSIE:**  THANK YOU, YOUR HONOR.

9      "COMMUNICATION PROTOCOL" IT IS. THIS IS UNDER THE

10  "COMMUNICATION PROTOCOL" TAB IN THE BINDER.  AND I START WITH

11  TAB FOUR.

12      YOUR HONOR, THERE ARE TWO ISSUES LURKING HERE.  ONE WE

13  CHARACTERIZE AS THE NARROW ISSUE AND ONE IS THE LARGER ISSUE.

14      I'LL START WITH THE NARROW ISSUE. THE NARROW ISSUE IS:  IS

15  IT A PROTOCOL OPTIMIZED FOR SENDING CHARACTERS, OR FOR SENDING

16  SINGLE CHARACTERS?  IT'S THE WORD "SINGLE" AND MORE ON THAT IN

17  A MINUTE.

18      THE LARGER ISSUE, YOUR HONOR, IS THE CHALLENGE TO

19  MASTEROBJECTS IN THE TENTATIVE DECISION, WHICH IS WHY DOESN'T

20  THE REFERENCE TO THE PRESENT INVENTION MEAN UNDER EDWARDS

21  LIFESCIENCES, YOUR HONOR'S DECISION FROM SOME YEARS AGO THAT

22  WAS AFFIRMED BY THE FEDERAL CIRCUIT AND TRADING TECH, WHY

23  DOESN'T THAT DEFINE THE CLAIMS?  ALL RIGHT?

24      THAT'S THE LARGER ISSUE, THE MACRO ISSUE.

25      LET ME START, AS I SAID I WOULD, WITH THE NARROW ISSUE,

 1   WHICH IS "OPTIMIZED FOR SENDING SINGLE CHARACTERS."

 2        SO HERE, YOUR HONOR, WE'RE LIVING WITHIN THE NOTION THAT

 3   THE DEFINITION IN THE SPECIFICATION LIMITS THE CLAIMS. WE'RE

 4   PUTTING ASIDE THE LARGER ISSUE.  WITHIN THE NARROW ISSUE IS IT

 5   SENDING CHARACTERS OR SENDING SINGLE CHARACTERS?

 6        AND THAT TAKES US TO TAB FIVE.

 7        YAHOO! SAYS IN ITS BRIEF ON PAGE NINE, AND WE QUOTED IT

 8   HERE:

 9             "NOWHERE DO THE SPECIFICATIONS SUGGEST THAT THE

10        PROTOCOL IS NOT" -- THEIR EMPHASIS -- "OPTIMIZED FOR

11        SENDING SINGLE CHARACTERS FROM THE CLIENT TO THE SERVER

12        AND LISTS OF STRINGS FROM THE SERVER TO THE CLIENT."

13        THAT IS FLAT OUT INCORRECT.

14        THE '639 AND '326 SPECIFICATIONS EXPLICITLY SAY "SEND

15   CHARACTERS," NOT "SEND SINGLE CHARACTERS."  AND I QUOTE THEM

16   BOTH HERE, YOUR HONOR.

17        AND, IN FACT, IN YAHOO!'S BRIEF IT DEFINES THE INVENTION

18   ON PAGE EIGHT OF ITS BRIEF.  AND I'VE QUOTED THAT HERE, AS

19   WELL.  AND IT SAYS -- AND I QUOTE YAHOO:

20             "EACH OF THE PATENTS SPECIFICALLY STATE, 'THE

21        INVENTION INCLUDES A SERVER, THAT HANDLES REQUESTS FOR

22        INFORMATION FROM CLIENTS, AND A COMMUNICATION PROTOCOL

23        THAT IS OPTIMIZED FOR SENDING CHARACTERS."

24        ALL RIGHT?  SO YOU'VE GOT '326.  YOU'VE GOT '639.  YOU'VE

25   GOT YAHOO!'S BRIEF. THEY ALL SAY "OPTIMIZED FOR SENDING

```
 1    CHARACTERS."
 2         AND, IN FACT, YOUR HONOR PICKED UP THE LANGUAGE FROM THEIR
 3    BRIEF ON PAGE THREE OF THE TENTATIVE DECISION, LINES FOUR AND
 4    FIVE. AND YOU SAY "OPTIMIZED FOR SENDING CHARACTERS." OKAY?
 5         BUT, THEN, THEY PONIED IN AN ADDITIONAL WORD.  AND AS THE
 6    COURT KNOWS, IN THIS BUSINESS WORDS MATTER. A SINGLE WORD CAN
 7    MATTER.
 8         AND THE WORD THEY PUT HERE IS "SINGLE." AND THAT IS JUST
 9    INCORRECT. IT'S WITHIN THE CONTEXT OF THIS NARROW ISSUE. IT IS
10    A PROTOCOL OPTIMIZED FOR SENDING CHARACTERS.  THAT'S WHAT THE
11    PATENTS SAY. THAT'S WHAT THEIR BRIEF SAYS.
12         IT'S NOT A PROTOCOL OPTIMIZED FOR SENDING SINGLE
13    CHARACTERS.
14         NOW, THE COURT MAY WONDER:  WHY DOES IT MATTER?  HERE'S
15    WHY.  BECAUSE THERE ARE PROTOCOLS, INCLUDING THEIRS, THAT ARE
16    CLEARLY OPTIMIZED FOR SENDING CHARACTERS. BUT THEY WILL SAY
17    IT'S NOT A PROTOCOL THAT'S OPTIMIZED FOR SENDING ONE CHARACTER
18    AS AGAINST TWO OR MORE.
19         THAT'S WHY THEY PONIED IN "SINGLE" THERE. SO ON THE NARROW
20    ISSUE IT'S AN OPTIMIZATION FOR SENDING CHARACTERS.  THAT'S WHAT
21    THE PATENTS SAY.  THAT'S WHAT THE BRIEF SAYS, NOT SENDING
22    SINGLE CHARACTERS.
23         THE LARGER ISSUE:  YOUR HONOR, WE TAKE THE COURT'S POINT.
24    IF A PATENT IN THE SPECIFICATION USES THE WORDS "THE PRESENT
25    INVENTION" OR "THIS INVENTION," THAT OFTENTIMES MEANS AND
```

1    SHOULD MEAN THAT IT'S THE DEFINING THE CLAIMS.

2            **THE COURT:**  YOU'VE PROBABLY ARGUED THAT YOURSELF.

3            **MR. HOSIE:**  I HAVE, INDEED. AND, YOU KNOW, WHEN I

4    HAVE I'VE PROBABLY BEEN RIGHT, BECAUSE HERE'S THE THING. IT'S

5    ALWAYS CASE SPECIFIC.  IT ALWAYS MATTERS.

6        I WENT BACK AND READ YOUR HONOR'S CLAIMS CONSTRUCTION

7    RULING IN THE EDWARDS LIFESCIENCES CASE.  ALL RIGHT?  I READ

8    THE FEDERAL CIRCUIT'S, THEN I WENT BACK, AND I GOT THE CLAIMS

9    RULING OFF THE DOCKET, AND READ IT.

10       IN THAT CASE IT WAS CONSISTENT.  IT WAS ALWAYS MALLEABLE

11   WIRES VERSUS RIGID WIRES.  THERE WAS NO INCONSISTENCY.  IT WAS

12   PRETTY CLEAR WHAT THEY WERE SAYING.

13       AND SO THE LEGAL CONSTRUCT, THE LEGAL CONSTRUCT HERE --

14   AND I TAKE THIS FROM THE MOST RECENT FEDERAL CIRCUIT CASE I

15   COULD FIND ABSOLUTE SOFTWARE -- IS THAT THE USE OF THE PHRASE

16   "THIS INVENTION" OR "PRESENT INVENTION" IS NOT ALWAYS SO

17   LIMITING WHERE THERE ARE INCONSISTENT REFERENCES IN THE

18   SPECIFICATION, WHERE OTHER ASPECTS OF THE SPECIFICATION, OF THE

19   CLAIMS DO NOT SUPPORT THAT READING.

20       SO TRADING TECHNOLOGIES SAYS EXACTLY THE SAME THING.

21   THAT'S ACTUALLY A PRETTY GOOD DECISION FOR MASTEROBJECTS HERE.

22   JUDGE RADER WAS VERY CAREFUL.  HE SAID:

23           "WHERE A SPECIFICATION USES A SINGLE EMBODIMENT

24       COURT'S SHOULD NOT LIMIT THE BROADER CLAIM UNLESS THERE IS

25       A CLEAR INTENT TO LIMIT THE CLAIM SCOPE USING WORDS OR

1      EXPRESSIONS OF MANIFEST EXECUTION OR RESTRICTION."

2      I'M JUST GOING TO CALL THAT:

3          "CLEAR INTENT MADE MANIFEST."

4      THERE HAS TO BE A CLEAR INTENT MADE MANIFEST, ACCORDING TO

5  THE FEDERAL CIRCUIT.  AND THAT'S BEEN CONSISTENT FOR A DECADE

6  PLUS. CLEAR INTENT MADE MANIFEST TO LIVE WITH THE DEFINITION IN

7  THE SPEC AS READ INTO THE CLAIMS.

8      AND SO MAPPING THAT LEGAL CONSTRUCT TO WHAT WE HAVE HERE

9  WHAT DO WE SEE?  WELL, THIS TAKES US TO TAB SEVEN, YOUR HONOR,

10  "THE COMMUNICATION PROTOCOL."

11      FIRST PIECE OF EVIDENCE OF INCONSISTENT USAGE. AGAIN, AT

12  TAB SEVEN.

13          **THE COURT:**  I AM THERE.

14          **MR. HOSIE:**  YES, TAB SEVEN, YOUR HONOR.

15          **THE COURT:**  OKAY.

16          **MR. HOSIE:**  "COMMUNICATION PROTOCOL, EVIDENCE OF

17  INCONSISTENCY."

18      THIS IS JUST FROM THE '326 COLUMN 14. IT STARTS:

19          "EMBODIMENTS OF THE PRESENT INVENTION."

20      IT GOES ON TO SAY:

21          "THE TERMS 'CLIENT' AND 'SERVER' ARE USED HEREIN TO

22      REFLECT SPECIFIC EMBODIMENTS."

23      THEREAFTER, IN THIS PARAGRAPH, YOUR HONOR, WHICH IS THE

24  PARAGRAPH THAT HAS THERE "THIS INVENTION", THE PRESENT

25  INVENTION" "CLIENT" AND "SERVER" ARE CAPITALIZED.  THEY ARE NOT

1   BEFORE.  THEY ARE AFTER.

2        THAT MAY SOUND LIKE A VERY PETTIFOGGING POINT, BUT IT'S

3   REALLY NOT, BECAUSE IN THIS PARAGRAPH THEY ARE DEFINING

4   "CLIENT" AND "SERVER" AS BEING AN EMBODIMENT.  AND THEY SHOW

5   THAT IN THE TEXT BY CAPITALIZING THE "C" AND THE "S"

6   THEREAFTER.

7        AND IT GOES ON TO SAY:

8            "ANY PROCESS THAT CAN SEND CHARACTERS AND RECEIVE

9        STRINGS CAN BE CONSIDERED A CLIENT."

10   AND IT GOES ON TO SAY -- GIVE SOME EXAMPLES.

11           "FOR EXAMPLE, IN AN INDUSTRIAL OR POWER SUPPLY

12       SETTING, THE CONTROL SYSTEM OF A POWER PLANT COULD SEND

13       SENSOR READINGS TO THE SYSTEM, AND IN RETURN RECEIVE LISTS

14       OF ACTIONS TO BE TAKEN, BASED ON THOSE SENSOR READINGS."

15       THOSE AREN'T CHARACTERS AT ALL.  THAT IS INCONSISTENT WITH

16   THE NOTION THAT THE USE OF THE PRESENT INVENTION IN THIS

17   EMBODIMENT SHOULD BE READ TO LIMIT THE CLAIMS THEMSELVES.

18       NEXT TAB, YOUR HONOR, MORE INCONSISTENCY.  AND THIS IS,

19   AGAIN, PER THE LEGAL CONSTRUCT IN ABSOLUTE SOFTWARE AND TRADING

20   TECHNOLOGIES.

21       THERE IS AN ACTUAL EXAMPLE IN '529 OF WHAT'S SENT. IT'S

22   THE MESSAGE SENT. AND IT'S IN YELLOW HERE:

23           "STRING ANGLE B-E CLOSE ANGLE."

24       THAT'S WHAT IS SENT HERE IS TWO CHARACTERS.  SO IN THE

25   ONE CANONICAL EXAMPLE IN THE SPECIFICATION THEY ARE NOT SENDING

1  ONE CHARACTER, THEY ARE SENDING TWO.  IT'S MULTIPLE CHARACTERS.

2          **THE COURT:**  JUST I MAY BE A LITTLE SLOW ON THE UPTAKE

3  HERE, BUT AM I HEARING YOU SAY THAT YOU ESSENTIALLY OR

4  SUBSTANTIALLY AGREE WITH THE COURT'S TENTATIVE CONSTRUCTION

5  EXCEPT FOR THE TERMS "SINGLE CHARACTERS"?  BECAUSE, OBVIOUSLY,

6  THAT'S WHAT YOUR PROPOSED RULE IS, SINGLE CHARACTERS.

7      THE COURT'S TENTATIVE CONSTRUCTION IS -- TALKS IN TERMS OF

8  SINGLE CHARACTERS.  SO I DON'T UNDERSTAND WHAT -- BECAUSE WHAT

9  YOU'RE ARGUING ABOUT, ALTHOUGH YOU ARE ARGUING IN THE CONTEXT

10 OF THE COURT'S TENTATIVE RULING, ARE YOU SAYING THAT THE TERM

11 "CHARACTERS" SHOULD BE INCLUDED OR SHOULD NOT BE INCLUDED?

12         **MR. HOSIE:**  WE DON'T BELIEVE SO, YOUR HONOR, SO

13 THAT'S WHY I CUT IT INTO TWO ISSUES.

14         **THE COURT:**  ALL RIGHT.

15         **MR. HOSIE:**  THE FIRST ISSUE IS IF WE ASSUME THE COURT

16 IS RIGHT --

17         **THE COURT:**  RIGHT.

18     **MR. HOSIE:**  -- AND THAT THE TRADING TECH CITE MEANS

19 WHAT IT SAYS HERE AND THIS DEFINITION IS NOT FOR A PREFERRED

20 EMBODIMENT BUT SHOULD RULE THE CLAIMS BROADLY --

21         **THE COURT:**  RIGHT.

22         **MR. HOSIE:**  -- WITHIN THAT CONSTRUCT, WHICH MEANS

23 WE'VE ALREADY LOST THE LARGER ISSUE, RIGHT?  WITHIN THAT

24 CONSTRUCT IT'S CLEARLY SENDING CHARACTERS, NOT SINGLE

25 CHARACTERS.

 1      TAKING A STEP BACK AND ASKING THE LARGER QUESTION:  WELL,

 2  IS IT, IN FACT, RIGHT, THOUGH, TO SAY THAT THIS INVENTION IN

 3  THIS PARAGRAPH MEANS THAT IT IS DEFINING THE CLAIMS OR IS IT

 4  LIMITED TO A PREFERRED EMBODIMENT?

 5      THAT LEADS US TO THE LEGAL CONSTRUCT ABSOLUTE SOFTWARE,

 6  TRADING TECHNOLOGIES: HAS IT BEEN A CLEAR MANIFESTATION?

 7  INTENT MADE MANIFEST CLEARLY TO LIMIT THE CLAIMS THEMSELVES TO

 8  THAT DEFINITION IN THE EMBODIMENT?

 9      AND THAT THAT THEN THE COURTS SAY:

10          "WELL, YOU HAVE TO LOOK FOR EVIDENCE OF

11      INCONSISTENCY."  BECAUSE, YOU KNOW WHAT?  IF IT'S

12  INCONSISTENT, THERE'S NOT A CLEAR INTENT THAT HAS BEEN MADE

13  MANIFESTS.  IT'S INCONSISTENT.

14          **THE COURT:**  YOU KNOW, IT ALWAYS BOTHERS ME THAT

15  LAWYERS DRAFT THESE PATENTS.  AND THEY HAVE TO KNOW IF THEY

16  TALK TO THEIR LITIGATION PARTNERS OR COLLEAGUES THAT WHEN THEY

17  USE THAT TERM THEY ARE IMMEDIATELY RUNNING THE RISK OF WHAT

18  EXACTLY THE COURT WAS INCLINED TO DO HERE.  AND THEY ARE

19  THEMSELVES TERMS OF ART, "THIS INVENTION."

20      OR IN THE EDWARDS CASE IT WAS "I.E." THAT I FOUND

21  INDICATED "THIS IS THE INVENTION."

22      SO JUST AN EDITORIAL COMMENT THAT I WISH PATENT LAWYERS

23  WOULD BE A LITTLE BIT MORE CAREFUL IN THE WAY THEY DRAFT THESE

24  THINGS.

25          **MR. HOSIE:**  OF COURSE.  ABSOLUTELY RIGHT.

```
1         MR. SMITH:  I AGREE, ALSO.

2         MR. HOSIE:  THAT'S WHY WE'RE PROSECUTION COUNSEL.

3         THE COURT:  THAT'S RIGHT.

4         MR. HOSIE:  THIS IS HARD ENOUGH.

5         THE COURT:  OKAY.  ANYTHING FURTHER?

6         MR. HOSIE:  LET ME JUST SKIP TO TAB NINE.  AND THIS

7    WILL FINISH MY PRESENTATION ON THIS.

8         THE THIRD THING WE CITE AS EVIDENCE OF INCONSISTENCY NOT

9    WILLING TO LIMIT THE CLAIMS TO OPTIMIZE OR SENDING CHARACTERS

10   IS THE LANGUAGE OF THE CLAIM ITSELF.

11        THE CLAIM LANGUAGE IS THE PRIME REAL ESTATE IN A PATENT,

12   RIGHT?  THAT'S WHAT MATTERS.  THAT IS PRIMARY.  THAT'S THE

13   FIRST THING THE COURTS LOOK TO TO SAY:  WHAT DOES THE CLAIM

14   MEAN AND COVER?

15        AND MASTEROBJECTS, RESPECTFULLY, YOUR HONOR, BELIEVES THAT

16   CLAIM ONE OF '529 EXPRESSLY DEFINES "COMMUNICATION PROTOCOL."

17   IT SAYS WHAT IT MEANS.

18        AND THAT'S A GOOD WAY OF WRITING PATENTS, BECAUSE IF YOU

19   DEFINE IT IN THE CLAIM PROPER HOPEFULLY YOU MITIGATE SOME OF

20   THESE MEDDLESOME FOREIGN CLAIMS CONSTRUCTION ISSUES THAT TAKE

21   UP SO MUCH OF THE PATENT BAR'S TIME.

22        SO HERE IT SAYS:

23            "A COMMUNICATION PROTOCOL" -- THAT'S WHAT WE'RE

24        TALKING ABOUT -- "ENABLES AN ASYNCHRONOUS CONNECTION OVER

25        A NETWORK BETWEEN A CLIENT SYSTEM AND A SERVER SYSTEM, AND
```

1    ALLOWS THE CLIENT TO SEND VIA THE NETWORK AND WITHIN A

2    SESSION BETWEEN THE CLIENT SYSTEM AND THE SERVER SYSTEM,

3    A LENGTHENING QUERY STRING," ET CETERA.

4    YOUR HONOR, IS THIS NOT A DEFINITION OF "COMMUNICATION

5    PROTOCOL"?

6    **THE COURT:**  WELL, IT IS.  BUT IT ALSO IS SAYING THAT

7    THE SUBJECT -- AND THAT'S A PRETTY AWKWARD SENTENCE, BUT I

8    THINK -- BECAUSE THE SUBJECT IS PRETTY FAR AWAY FROM THE

9    PREDICATE.  BUT I THINK THE THING THAT IS BEING COMMUNICATED

10   OVER THE SERVER SYSTEM ARE THE CONSECUTIVELY INPUT CHARACTERS,

11   CORRECT?

12   **MR. HOSIE:**  YES.

13   **THE COURT:**  SO IT IS TALKING -- IT IS DEFINING IT IN

14   TERMS OF SENDING CHARACTERS.

15   **MR. HOSIE:**  IT IS.

16   **THE COURT:**  NOT JUST INFORMATION.

17   **MR. HOSIE:**  BUT DOES IT SAY IT'S OPTIMIZED FOR

18   SENDING CHARACTERS?  THAT'S THE KEY. THIS SAYS "SENDING

19   CHARACTERS," BUT DO YOU HAVE TO HAVE A SYSTEM THAT IS

20   EMPIRICALLY OPTIMIZED FOR SENDING CHARACTERS?  WHERE DOES THE

21   WORD "OPTIMIZE" COME HERE, YOUR HONOR?

22   THAT'S THE RUB.  THERE REALLY ARE TWO RUBS.  FIRST, OF

23   COURSE, IT IS SINGLE VERSUS SENDING CHARACTERS.  AND THEN,

24   WHERE IS OPTIMIZATION IN THIS DEFINITION IN THE CLAIM PROPER?

25   IT'S NOTE THERE.  THEY ARE READING IT IN FROM THE SPEC.

| | |
|---|---|
| 1 | THEY ARE READING IT FROM A PREFERRED EMBODIMENT.  THE EVIDENCE |
| 2 | IS AT MINIMUM GROSSLY INCONSISTENT AS TO WHETHER THERE WAS A |
| 3 | CLEAR INTENT MADE MANIFEST TO THE LIMIT THE CLAIMS TO: |
| 4 | "SYSTEM OPTIMIZED FOR SENDING CHARACTERS." |
| 5 | AND IT SURE WASN'T "SENDING SINGLE CHARACTERS." |
| 6 | THANK YOU, YOUR HONOR. |
| 7 | **THE COURT:**  ALL RIGHT, COUNSEL. |
| 8 | **MR. SMITH:**  THANK YOU, YOUR HONOR. |
| 9 | **THE COURT:**  START WITH TELLING ME WHETHER YOU AGREE |
| 10 | WITH THE TENTATIVE. |
| 11 | **MR. SMITH:**  YOUR HONOR, YAHOO! DOES AGREE WITH THE |
| 12 | TENTATIVE RULING. |
| 13 | **THE COURT:**  OKAY. |
| 14 | **MR. SMITH:**  SO I'M NOT GOING TO RECITE WHAT THE |
| 15 | RULING IS.  I THINK MR. HOSIE FRAMED THE ISSUE FAIRLY WELL. |
| 16 | AND, IN FACT, I DON'T NECESSARILY EVEN DISAGREE WITH THE |
| 17 | LEGAL STANDARD THAT HE ANNOUNCED, WHICH IS THE COURT SHOULD |
| 18 | LOOK FOR INCONSISTENCY, BASICALLY WHETHER THE PRESENT INVENTION |
| 19 | STATEMENT WOULD READ OUT A PREFERRED EMBODIMENT AS DISCLOSED. |
| 20 | BUT I INTEND TO SHOW YOU THAT THAT IS NOT TO SAY IT |
| 21 | ACTUALLY -- |
| 22 | **THE COURT:**  OR PUTTING IT ANOTHER WAY IT IS |
| 23 | INCONSISTENT WITH WHAT MR. HOSIE CALLS "THE PRIME REAL ESTATE," |
| 24 | THE ACTUAL CLAIM LANGUAGE. |
| 25 | **MR. SMITH:**  RIGHT.  CLEARLY IF IT WAS INCONSISTENT |

1  WITH THE CLAIM LANGUAGE THAT COULD BE AN ISSUE.  BUT I DON'T

2  BELIEVE IT IS HERE.  I'M GOING TO SHOW YOU IT'S NOT.

3        **THE COURT:**  ALL RIGHT.

4        **MR. SMITH:**  SO FIRST MR. HOSIE SUGGESTED THAT YAHOO!

5  MADE UP THE WORD "SINGLE" OUT OF WHOLE CLOTH; THAT WE TRIED TO

6  SNEAK IT IN.

7        HERE IT'S ACTUALLY ON THE SLIDE.  A DIRECT QUOTE FROM THE

8  '529 PATENT.  AND YOUR HONOR WILL SEE IT STATES:

9            "THE INVENTION INCLUDES A SERVER, THAT HANDLES

10        REQUESTS FOR INFORMATION FROM CLIENTS, AND A COMMUNICATION

11        PROTOCOL THAT IS OPTIMIZED FOR SENDING SINGLE CHARACTERS

12        FROM A CLIENT TO THE SERVER AND LISTS OF STRINGS FROM THE

13        SERVER TO THE CLIENT."

14        SO I'VE NOT JUST MADE UP THE WORD "SINGLE" AND ATTEMPTED

15  TO SLIP IT INTO THE CONSTRUCTION. IT'S IN THE '529 PATENT. AND,

16  YOUR HONOR, EVERY PATENT IN THIS FAMILY, THE '326 AND THE '639

17  PATENT --

18        **THE COURT:**  WHEN YOU SAY "IT'S IN THE PATENT,"

19  EVERYTHING IS IN THE PATENT.  NOT EVERYTHING, BUT THERE'S

20  SPECIFICATIONS.  THERE'S EMBODIMENTS.  SO WHEN YOU SAY "IN THE

21  PATENT," AT WHAT PART OF THE PATENT?

22        **MR. SMITH:**  RIGHT.  THIS IS IN THE SPECIFICATION.

23  IT'S NOT -- THIS QUOTE IS NOT FROM THE CLAIMS.

24        **THE COURT:**  OKAY.

25        **MR. SMITH:**  WHAT I MEANT, WHAT I WAS TRYING TO

1    SUGGEST, YOUR HONOR, IS THAT THERE IS SUPPORT.  THAT IT'S

2    NOT -- THE WORD "SINGLE" IS NOT SOMETHING THAT WE MADE UP.

3           **THE COURT:**  OH, I DON'T THINK YOU DID. IN FACT, IT'S

4    SOMETHING THAT THE COURT CONSIDERED IN ITS TENTATIVE, BECAUSE

5    IT SEEMED TO BE -- IT SEEMED THERE WAS LANGUAGE TO INDICATE

6    THAT THAT WAS THE DEFINITION OF THE COMMUNICATION PROTOCOL.

7           **MR. SMITH:**  THANK YOU, YOUR HONOR.

8           **THE COURT:**  SO I DON'T THINK ANYBODY WOULD SERIOUSLY

9    ARGUE YOU MADE IT UP.  IT'S JUST NOT APPROPRIATE.

10          **MR. SMITH:**  THAT'S WHAT I TOOK FROM MR. HOSIE'S

11    ARGUMENT.  I MIGHT HAVE MISUNDERSTOOD.

12          **THE COURT:**  AND IT'S ALWAYS DANGEROUS WHEN YOU CITE

13    THE SAME COURT ON ITS RULING.  I ALWAYS KIND OF -- I DON'T

14    BRISTLE AT IT, BUT IT'S ALWAYS INTERESTING, BECAUSE THE COURT

15    IS NOT THE FOUNT OF ALL KNOWLEDGE.

16    YOU KNOW, WE'RE JUST ONE COURT.  AND IT MAY NOT EVEN BE

17    BINDING ON ME DEPENDING UPON WHAT DAY IT IS AND WHAT THE

18    FEDERAL CIRCUIT HAS DONE IN THE INTERIM, SO --

19          **MR. SMITH:**  YOU ARE CORRECT, YOUR HONOR. THE EDWARDS

20    LIFESCIENCES CASE ACTUALLY COMES UP A FEW TIMES IN THIS

21    PRESENTATION BECAUSE THERE ARE ACTUALLY SEVERAL -- IT'S A

22    LEADING CASE ON THE ISSUE OF INCORPORATING DEFINITIONS, NOT

23    JUST PRESENT INVENTION --

24          **THE COURT:**  THAT WAS A CASE WHERE ONE OF THE PARTIES,

25    ULTIMATELY THE APPELLANT, WANTED IMMEDIATE JUDGMENT, BECAUSE HE

```
 1   BET THE COURT A DINNER THAT HE WAS GOING TO GET ME REVERSED.

 2        I HAVEN'T SEEN HIM SINCE IN ANOTHER CASE BUT --

 3            MR. SMITH:  THAT WAS NOT PART OF THE FEDERAL

 4   CIRCUIT'S DECISION.

 5            MR. HOSIE:  I THOUGHT NO ONE COULD DO THAT.

 6            THE COURT:  THAT'S RIGHT.

 7        GO ON.

 8            MR. SMITH:  SO THE SECOND POINT I WANT TO MAKE ON

 9   THIS SLIDE IS THAT THE '529 PATENT IS ACTUALLY INCORPORATED BY

10   REFERENCE IN BOTH THE '326 AND '639 PATENTS.  BOTH THOSE

11   PATENTS INCORPORATE -- THE '529 PATENT STEMS FROM A PARENT

12   APPLICATION.

13        AND BOTH THE SUBSEQUENT '326 AND '639 PATENTS INCORPORATE

14   THAT APPLICATION BY REFERENCE.  AND UNDER THE LAWS OF

15   INCORPORATION BY REFERENCE IT'S AS IF EVERY STATEMENT IN THE

16   '529 PATENT IS IN THE '326 AND '639 PATENTS.

17        SO AS A MATTER OF LAW THIS STATEMENT DOES APPEAR IN ALL

18   THREE PATENTS.

19            THE COURT:  ALL RIGHT.

20            MR. SMITH:  OKAY.  SO MR. HOSIE ARGUES THAT THIS IS

21   SIMPLY A PREFERRED EMBODIMENT OF -- THAT IS DESCRIBED.

22        IF YOU LOOK AT THE BLOCK FOR IT THAT HE PROVIDES IN HIS

23   BRIEF, IT ACTUALLY COBBLED TOGETHER TWO SEPARATE QUOTES FROM

24   TWO ENTIRELY DIFFERENT PARTS OF THE PATENT.

25        ON THE LEFT HAND WE HAVE A QUOTE THAT STATES IN THE
```

1   PREFERRED EMBODIMENT -- I'M SORRY:

2          "IN THE DETAILED DESCRIPTION BELOW, AN EMBODIMENT OF

3      THE PRESENT INVENTION IS REFERRED TO AS 'QUESTOBJECTS.'"

4          AND THEN, THE INVENTION STATEMENT UPON WHICH YAHOO! RELIES

5   APPEARS TWO COLUMNS LATER ON A SEPARATE PAGE.  AND IT DOESN'T

6   EVEN MENTION THE TERM "QUESTOBJECTS." IT MENTIONS "THE

7   INVENTION."

8      SO AS MR. HOSIE MENTIONED THE ISSUE IS REALLY WHETHER OR

9   NOT THIS INVENTION STATEMENT ABOUT SINGLE CHARACTERS AND

10  OPTIMIZATION, IF THERE'S ANY INCONSISTENCY IN THE PATENT

11  EMBODIMENT, THEY ARE NOT OPTIMIZED.

12     AND I SUBMIT THAT THEY ACTUALLY ARE NOT. THE PATENT IS

13  ACTUALLY REPLETE WITH VARIOUS "PRESENT INVENTION" STATEMENTS.

14  AND I'VE CITED A FEW OF THEM HERE.

15     THEY ALL TYPICALLY DESCRIBE THE INVENTION IN TERMS OF

16  OPTIONAL FEATURES, THINGS THAT THE INVENTION CAN HAVE, MAY

17  HAVE.  THAT THE INVENTION HAS IN ITS OWN EMBODIMENT OR FEATURES

18  THAT USE THE PRESENT INVENTION. VERY OPTIONAL CHARACTERISTICS.

19     THE QUOTE UPON WHICH YAHOO! RELIES DOESN'T HAVE ANY

20  QUALIFYING STATEMENTS.  I JUST SAYS FLAT OUT IN THE INVENTION

21  IT'S OPTIMIZED.

22     HERE'S AN EXAMPLE OF AN INVENTION STATEMENT DESCRIBING

23  THE PROTOCOL YAHOO! DOES NOT CONTEND, FOR EXAMPLE, IS REQUIRED.

24          "THE PROTOCOL OF THE PATENT, OF THE PRESENT INVENTION

25      CAN BE IMPLEMENTED ON TOP OF NETWORKING STANDARDS SUCH AS

1    TCP/IP."

2         THERE'S AN EXAMPLE OF THE STATEMENT THAT SAYS "CAN," SO

3    THAT ONE IS NOT REQUIRED.

4         SO MR. HOSIE ARGUES -- I'M SORRY.  LET ME GO BACK AND

5    ACTUALLY ADDRESS MR. HOSIE'S ARGUMENT ABOUT INCONSISTENCY.

6         MR. HOSIE CITED A NUMBER OF EMBODIMENTS WHERE THE PATENT

7    TRANSMITS MULTIPLE CHARACTERS.  AND I AGREE THAT THOSE ARE

8    WITHIN THE SCOPE OF THE CLAIMS.

9         HOWEVER, THE TERM "OPTIMIZE" DOES NOT REQUIRE YOU TO SEND

10   MULTIPLE CHARACTERS OR SINGLE CHARACTERS.  IT JUST SAYS IT'S

11   SPECIALLY DESIGNED TO SEND SINGLE CHARACTERS.  SOMETHING THAT

12   IS SPECIALLY DESIGNED TO SEND SINGLE CHARACTERS IS NOT LIMITED

13   TO DOING THAT.

14        SO THE FACT THAT MR. HOSIE CORRECTLY POINTS TO EMBODIMENTS

15   WHERE THE CLIENT IS TRANSMITTING TWO CHARACTERS OR THREE

16   CHARACTERS AT A TIME DOES NOT MEAN THAT THE PROTOCOL THAT IT'S

17   USING IS NOT, IN FACT, OPTIMIZED AND BEST USED FOR SENDING

18   SINGLE CHARACTERS.

19        SO I SUBMIT THERE'S ACTUALLY NO INCONSISTENCY, THOUGH I

20   DON'T DISAGREE WITH THE EMBODIMENTS HE DESCRIBED.  I DON'T

21   BELIEVE THERE IS INCONSISTENCY THERE.

22             **THE COURT:**  BUT YOU WOULD AGREE THAT THE STARTING

23   POINT OR AT LEAST SORT OF THE ELEPHANT IN THE ROOM IS THE

24   PURPORTED DEFINITION OF THE INVENTION.  AND THEN, YOU TAKE THAT

25   AND YOU SAY:

1    "OKAY. THAT'S THE PATENTEE ACTING AS HIS OR HER OWN

2    LEXICOGRAPHER."

3    AND NOW YOU HAVE TO SEE WHETHER THAT DEFINITION RUNS

4    CONSISTENTLY THROUGHOUT THE PATENT. AND THAT'S REALLY THE

5    ISSUE THAT THE COURT NEEDS TO DECIDE.

6    **MR. SMITH:** I THINK THAT IS CORRECT, YOUR HONOR.

7    **THE COURT:** OKAY.

8    WOULD YOU LIKE TO REPLY?

9    **MR. HOSIE:** TWO THINGS VERY BRIEFLY. SENDING SINGLE

10   CHARACTERS, IT'S NOT IN '326. IT'S NOT IN '639. IT ONLY

11   APPEARS ONCE IN ONE SPECIFICATION, '529.

12   YAHOO! SAID IN ITS BRIEF THAT THE THREE SPECIFICATIONS ARE

13   IDENTICAL. THEY ALL SAY IT. THEY DON'T. IT'S INCONSISTENT. SO

14   THEY ARE READING THE WORD "SINGLE" FROM ONE SPECIFICATION INTO

15   THE CLAIMS OF WHOLLY DIFFERENT PATENTS.

16   SECOND, MR. SMITH ACCUSED US OF SORT OF CREATING A

17   FRANKENSTEIN GRAPHIC WHERE WE COBBLED TOGETHER DIFFERENT

18   PORTIONS.

19   THE GRAPHIC WE HAVE ON TAB SEVEN, WHICH IS ACTUALLY THE

20   PARAGRAPH HERE, THAT'S ALL FROM ONE PARAGRAPH. COLUMN 14 --

21   I'M SORRY, TWO PARAGRAPHS -- COLUMN 14, 4 THROUGH 34.

22   THE REAL ISSUE, YOUR HONOR, FROM OUR PERSPECTIVE IS SINGLE

23   CHARACTERS. WE JUST DON'T THINK THAT'S RIGHT. WE DON'T THINK

24   IT'S FAIR.

25   **THE COURT:** ALL RIGHT. YOU WANT ANYTHING FURTHER YOU

```
1    WANT TO SAY ON THIS?  ANYTHING FURTHER ON THIS POINT?

2              MR. SMITH:  NOTHING FURTHER, YOUR HONOR.

3              THE COURT:  ALL RIGHT.  LET'S MOVE ON TO

4    "CONTENT-BASED CACHE/QUERY AND RESULT CACHE."

5         LET'S HEAR FROM YOU FIRST, MR. HOSIE.

6              MR. HOSIE:  THANK YOU, YOUR HONOR.

7         THAT TAKES US TO TAB TEN "CONTENT-BASED CACHE."

8         THE COURT HAS PROPOSED TWO TENTATIVE DEFINITIONS, AND I

9    HAVE THEM ON THIS PAGE.

10        THE FIRST:

11             "A PERSISTENT STORE OF QUERIES AND CORRESPONDING

12        RESULT SETS EXECUTED BY A CONTENT ENGINE FOR A SPECIFIC

13        CONTENT CHANNEL."

14        THE PROBLEM WITH THAT, YOUR HONOR, WHICH I THINK THE COURT

15   RECOGNIZES THAT ITSELF USES UNDEFINED TERMS THAT IS AN

16   INVITATION FOR FURTHER DISPUTE. IT CREATES MORE PROBLEMS,

17   RESPECTFULLY, THAN IT SOLVES.

18        AND I'LL POINT OUT ONE SPECIFIC PROBLEM WITH THAT IN A

19   MINUTE, BECAUSE THERE'S SOMETHING GOING ON UNDER THE HOOD HERE

20   THAT NEEDS TO BE CALLED OUT TO THE COURT'S ATTENTION.

21        TENTATIVE DEFINITION TWO:

22             "A PERSISTENT STORE OF QUERIES AND CORRESPONDING

23        RESULT SETS EXECUTED BY THE SYSTEM."

24        WE THINK THAT'S VERY FAITHFUL TO THE SPECIFICATIONS.  IT'S

25   ESSENTIALLY WHAT THE CLAIMS SAY.
```

1    THE ONLY CAUTION -- AND IT'S A FOOTNOTE CAUTION -- IT'S

2  THAT THE PARTIES MAY DISPUTE WHAT "PERSISTENT" MEANS AND HOW

3  PERSISTENT IS PERSISTENT?  BUT THAT'S, I THINK, A FATE FOR A

4  DIFFERENT DAY.

5    SO OF THESE TWO DEFINITIONS --

6    **THE COURT:**  WHAT DAY WOULD THAT BE?

7    **MR. HOSIE:**  PROBABLY SUMMARY JUDGMENT, YOUR HONOR.

8    **THE COURT:**  ALL RIGHT.  BUT YOU'RE NOT GOING TO BE

9  ASKING -- THIS IS WHAT HAPPENED IN EDWARDS.  EVERYBODY AGREED

10  THAT THE WORD -- I THINK IT WAS "WIRE" OR "MALLEABLE" DIDN'T

11  NEED TO BE CONSTRUED.  AND THEN, AFTER IT WAS ALL SAID AND

12  DONE, THEY SAID:

13    "OH, WE NEED TO CONSTRUE 'MALLEABLE'."

14    BUT I'M NOT BEING FACETIOUS.  IS THAT SOMETHING THAT YOU

15  THINK IN THE COURT'S CONSTRUCTION NEEDS TO BE DEFINED?  AND IF

16  SO, HOW WOULD YOU DEFINE IT?

17    **MR. HOSIE:**  WELL, IT'S A GOOD QUESTION.  DOES IT NEED

18  TO BE DEFINED?  I CAN'T ANSWER THAT FULLY BECAUSE I CAN'T

19  HANDICAP WHAT YAHOO! WILL SAY OR DO.

20    IF YAHOO! SAYS "PERSISTENT" MEANS PERMANENT FOREVER, WE

21  WOULD TAKE ISSUE WITH THAT. THE DEFINITION OF "PERSISTENT

22  DATABASE," IS A DATABASE THAT SURVIVES BETWEEN SESSIONS.  AND

23  WE THINK THAT'S RIGHT.

24    BUT I DON'T KNOW IF THIS IS AN ISSUE BECAUSE I DON'T KNOW

25  WHAT THEY ARE GOING TO SAY ABOUT "PERSISTENT."  IF THEY SAY

1    "PERMANENT" THERE'S A PROBLEM WITH THAT.  BUT MAYBE THEY WON'T

2    SAY THAT.

3         BUT BETWEEN THE TWO, THE SECOND IS CLEARLY BETTER BECAUSE

4    THE FIRST ONE JUST -- YOU KNOW, IT SOLVES ONE PROBLEM BY

5    INJECTING TWO OR THREE.

6         SPECIFICALLY ON THAT, YOUR HONOR, "CONTENT-BASED CACHE,"

7    THEY WANT TO DEFINE THAT USING A REFERENCE TO CONTENT ENGINE.

8    THEY TAKE A DEFINITION OF "CONTENT ENGINE" FROM THE '326

9    PATENT.

10        AND, YOUR HONOR, THE '326 PATENT DOESN'T EVEN USE THE

11   PHRASE "CONTENT-BASED CACHE."

12        THERE ARE NO '326 CLAIMS AT ISSUE IN THE CONTENT-BASED

13   CACHE DISPUTE.  WHY ARE THEY DOING THAT?  THEY ARE DOING THAT

14   BECAUSE THE '326 DEFINITION OF "CONTENT ENGINE" SAYS "A

15   THIRD-PARTY APPLICATION."

16        SO THAT'S A GET-OUT-OF-JAIL-FREE CARD FOR YAHOO!, YOUR

17   HONOR.  IT RUNS ITS OWN SYSTEM.  IT HAS ITS OWN SOFTWARE.  IT

18   DOESN'T OUTSOURCE SOME ASPECT OF ITS BACK END TO A THIRD-PARTY

19   TO DO THIS.

20        SO THAT'S WHY THEY ARE FIGHTING FOR THE '326 DEFINITION OF

21   CONTENT ENGINE PONIED INTO CONTENT-BASED CACHE.  IT'S ALL ABOUT

22   A THIRD-PARTY APPLICATION.

23        THEY ARE WRONG TO DO SO, YOUR HONOR, BLUNTLY BUT

24   RESPECTFULLY.  BECAUSE IF YOU LOOK AT THE ACTUAL DEFINITION IN

25   '529, WHICH DOES HAVE THE CONTENT-BASED CACHE LANGUAGE IN IT,

1    IT SAYS:

2        "A 'CONTENT ENGINE' IS A PLURALITY OF SERVERS CAN BE

3    USED AS A MIDDLE TIER TO SERVE A LARGE NUMBER OF STATIC OR

4    DYNAMIC DATA SOURCES.  HEREIN" -- UNDERSCORE EMPHASIS --

5    "HEREIN REFERRED TO AS 'CONTENT ENGINES.'"

6    NOTHING ABOUT A THIRD-PARTY APPLICATION, YOUR HONOR.  SO

7    THEY ARE TAKING "CONTENT ENGINE" FROM '326 THAT DOESN'T EVEN

8    HAVE THE PHRASE "CONTENT-BASED CACHE" IN IT.  AND THEY ARE

9    SLIPPING THAT IN TO '529 THAT HAS A GENERAL DEFINITION OF

10   "CONTENT ENGINE" THAT DOESN'T SAY ANYTHING ABOUT THIRD-PARTY

11   APPLICATION.

12   AND WHY ARE THEY DOING THAT?  BECAUSE THEY, OF COURSE, ARE

13   THE SEARCH ENGINE.

14   NOW, I DON'T KNOW IF THE COURT'S CURIOUS BUT WHY IS THAT

15   THIRD-PARTY APPLICATION LANGUAGE IN '326?  BECAUSE IT'S

16   DESCRIBING THE MASTEROBJECTS EMBODIMENT. MASTEROBJECTS BUILT

17   WHAT IT CALLS "AN INFORMATION WORM HOLE."

18   IT DIDN'T BUILD A SEARCH ENGINE.  IT USED A THIRD-PARTY

19   SEARCH ENGINE.  SO IT SAID THAT'S THE REFERENCE TO THIRD-PARTY

20   APPLICATION.  IT'S A THIRD-PARTY SEARCH ENGINE.

21   SO WHAT IS GOING ON HERE IS A VERY CLEVER ATTEMPT TO PONY

22   IN A THIRD-PARTY APPLICATION LIMITATION INTO THE '529 CLAIMS

23   THAT'S THOROUGHLY INCONSISTENT WITH THE '529 DEFINITION OF

24   CONTENT-BASED CACHE" AND "CONTENT ENGINE."

25       **THE COURT:**  SO WHICH OF THE TWO DO YOU AGREE WITH?

1          **MR. SMITH:**  WELL, FIRST, I WOULD ACTUALLY LIKE TO GO

2     BACK TO THE CONSTRUCTION THAT YAHOO! ACTUALLY PROPOSED.

3          **THE COURT:**  ALL RIGHT.

4          **MR. SMITH:**  BECAUSE I FEEL THAT MR. HOSIE

5     MISUNDERSTANDS IT.

6          THE CONSTRUCTION WE PROPOSED INCLUDES THE WORD "CONTENT

7     ENGINE."  DOES NOT ACTUALLY MENTION ANYTHING ABOUT A THIRD

8     PARTY.  AND SO WE WERE NOT ATTEMPTING TO IMPORT A THIRD-PARTY

9     REQUIREMENT INTO THIS CONSTRUCTION.  SO THAT'S JUST INCORRECT.

10    WE'RE NOT ARGUING FOR THAT, YOUR HONOR.

11         SO THE COURT HAS OFFERED TWO TENTATIVE CONSTRUCTIONS. THE

12    FIRST ONE A PERSISTENT SORT OF QUERY AND CORRESPONDING RESULT

13    SETS EXECUTED BY A CONTENT ENGINE FOR A SPECIFIC CONTENT

14    CHANNEL.

15         THAT IS A DIRECT QUOTE FROM THE '529 PATENT'S DEFINITION.

16    AND IT'S CONSISTENT WITH THE FIRST PART OF YAHOO!'S

17    CONSTRUCTION.  WE ALSO INCLUDED SOME EXPLANATION OF WHAT A

18    CACHE DOES, AND THEN, A DISCLAIMER FROM THE PROSECUTION HISTORY

19    WHICH YOUR HONOR'S NOT INCLUDED IN YOUR TENTATIVE CONSTRUCTION.

20    WE BELIEVE THOSE ARE CORRECT.  BUT WE AGREE WITH THE FIRST

21    CONSTRUCTION MORE THAN THE SECOND WHICH --

22         **THE COURT:**  WHAT IS YOUR CONTENTION AS TO WHAT

23    "PERSISTENT" MEANS IN THIS CONTEXT?

24         **MR. SMITH:**  WELL THE PARTIES HAVE NOT BRIEFED THAT,

25    AND I BELIEVE THAT REALLY IS A DISPUTE FOR A LATER DATE.

1    I WOULD LIKE TO CONSULT WITH MY EXPERT ABOUT IT.  BUT MY

2  UNDERSTANDING OF WHAT "PERSISTENT" IS IS SIMILAR TO MR. HOSIE'S

3  THAT THE SAME DATA IS AVAILABLE.  WHEN YOU END ONE SESSION AND

4  START ANOTHER SESSION A DAY OR TWO LATER, THE SAME DATA WOULD

5  BE THERE.  IT'S PERSISTENT BETWEEN SESSIONS.

6    THAT'S MY LAY UNDERSTANDING, BUT I AM NOT AN ENGINEER.

7    **THE COURT:**  ALL RIGHT.

8    **MR. SMITH:**  AND THE PATENT, I DON'T BELIEVE, DEFINES

9  "PERSISTENT."

10    **THE COURT:**  ALL RIGHT.

11    **MR. SMITH:**  SO THE SECOND TENTATIVE CONSTRUCTION IS

12  SIMILAR TO THE FIRST, BUT IT ACTUALLY ALTERS THE DEFINITION

13  FROM THE PATENT BY OMITTING REFERENCES TO A CONTENT ENGINE AND

14  A CONTENT CHANNEL.  AND I BELIEVE THAT IS ERROR.

15    SO HERE IS THE EXACT DEFINITION FROM THE '529 PATENT

16  "CONTENT-BASED CACHE."  IT'S EXACTLY AS YOUR HONOR'S FIRST

17  TENTATIVE CONSTRUCTION, FIRST CONSTRUCTION YOUR HONOR PROVIDED.

18  AND SO WE BELIEVE THAT CONSTRUCTION IS MORE CORRECT BECAUSE

19  IT'S THE EXACT QUOTE FROM THE PATENT'S GLOSSARY.

20    **THE COURT:**  AND IS IT CONSISTENT THROUGHOUT THE REST

21  OF THE PATENT, THAT DEFINITION?

22    **MR. SMITH:**  YES, I BELIEVE IT IS, YOUR HONOR.

23    **THE COURT:**  ALL RIGHT.

24    **MR. SMITH:**  SO THE '529 -- SO THAT DEFINITION DOES

25  MAKE REFERENCE TO A CONTENT ENGINE AND A CONTENT CHANNEL.  SO

1    SOME CLARIFICATION FOR THE JURY WILL LIKELY -- THERE WILL

2    LIKELY HAVE TO BE SOME CLARIFICATION TO THE JURY ABOUT WHAT A

3    "CONTENT ENGINE" IS AND WHAT A "CONTENT CHANNEL" IS.

4         BUT THE '529 PATENT IN THE EXACT SAME COLUMN AS THAT

5    DEFINITION DEFINES THOSE TERMS.  DEFINES "CONTENT CHANNEL" AS

6    PART OF QUESTOBJECTS' SYSTEM THAT PROVIDES ONE TYPE OF

7    INFORMATION FROM ONE CONTENT ENGINE; HAS A QUERY MANAGER AND A

8    CONTENT ACCESS MODULE AND A CONTENT ACCESS MODULE.  AND THEN,

9    IT DEFINES "CONTENT ENGINE" AS A DYNAMIC DATA SOURCE THAT

10   PROVIDES DATA TO THE CONTENT CHANNEL ACCESSING IS OWN DATABASE.

11        NOW, THESE DEFINITIONS ARE COMPLICATED AND CONVOLUTED.

12   BUT THE DEFINITIONS THAT MASTEROBJECTS, THE PATENTEE AND

13   PROSECUTOR, PROVIDED PUBLIC, PROVIDED COMPETITORS TO PROVIDE

14   NOTICE OF WHAT ITS CLAIMS MEANT.  AND IT USED THESE TERMS IN

15   THE PATENT.

16        IT DIDN'T USE THE GENERIC TERM "CACHE." IT USED THE TERM

17   "CONTENT-BASED CACHE," AND IT DEFINED THAT IN THE PATENT

18   SPECIFICATION.

19        AND THIS IS VERY SIMILAR TO THE EDWARDS LIFESCIENCES

20   DECISION, WHICH YOUR HONOR OBVIOUSLY REMEMBERS.  AND THAT IS

21   ACTUALLY WHAT I WOULD CALL "THE LEADING DECISION" ON WHAT A

22   NESTED OR SUBSIDIARY DEFINITION IN PATENTS.  AND WHAT I MEAN BY

23   THAT IS IN EDWARDS LIFESCIENCES THE PATENT CLAIMED A MEDICAL

24   GRAFT DEVICE.  AND THE COURT CONSTRUED THAT DEVICE TO REQUIRE

25   MALLEABLE WIRES.

1    THE PATENT CLAIMS DID NOT ACTUALLY USE THE WORD

2  "MALLEABLE," THOUGH.  BUT THE COURT FOUND, AND FEDERAL CIRCUIT

3  AFFIRMED, THAT THE PATENT CONTAINED A DEFINITION OF WHAT

4  "MALLEABLE" MEANT.

5    AND SO THE COURT THEN INCORPORATED THAT SUBSIDIARY

6  DEFINITION OF "MALLEABLE" INTO ITS CONSTRUCTION OF WIRE AND

7  INTO ITS CONSTRUCTION OF GRAFT DEVICE JUST AS YAHOO! IS ASKING

8  TO BE DONE HERE.

9    SO THIS IS NOT UNPRECEDENTED FOR A PATENT TO USE A CLAIM

10  TERM, TO DEFINE THAT TERM BY REFERENCE TO ANOTHER TERM, AND

11  THEN DEFINE THAT TERM IN THE SPECIFICATION.

12    IT'S ALSO A BASIC PRINCIPLE OF CLAIM CONSTRUCTION LAW THAT

13  WHEN YOU DEFINE A TERM FOR PURPOSES OF THE PREFERRED EMBODIMENT

14  AND YOU USE THAT SAME TERM IN THE CLAIMS YOU'RE BOUND BY THAT

15  DEFINITION THAT YOU GAVE.  YOU MADE THAT CHOICE.  YOU'RE BOUND

16  BY IT.

17    WE'VE CITED A FEW CASES IN OUR BRIEF, THE FONAR DECISION,

18  THE ZMI CASE THAT STANDS FOR THE BASIC PROPOSITION WHEN YOU USE

19  A DEFINED TERM IN THE CLAIMS YOU'RE BOUND BY THE DEFINITION YOU

20  GIVE.

21    AND, IN FACT, THE FEDERAL CIRCUIT IN EDWARDS LIFESCIENCES

22  ADDRESSED THIS ISSUE EXACTLY WHEN IT SAYS THE PATENTEE

23  ARGUED -- WELL, THE DEFINITION WE'RE OFFERING ONLY IN THE

24  CONTEXT OF A PREFERRED EMBODIMENT.  IT'S NOT BINDING ON US.

25    AND THE FEDERAL CIRCUIT SAID:

1      "WELL, CONTRARY TO WHAT THE PATENTEE ARGUES, THE

2      LOCATION WITHIN THE SPECIFICATION IN WHICH THE DEFINITION

3      APPEARS IS IRRELEVANT.  WHAT MATTERS IS:  IS IT A

4      DEFINITION?"

5      AND THE MASTEROBJECTS INCLUDED THESE TERMS IN A GLOSSARY.

6      AND THERE'S NO CLEARER EXAMPLE OF A PATENTEE BEING A

7      LEXICOGRAPHER THAN IF IT CALLS SOMETHING "A GLOSSARY," AND THEN

8      OFFERS DEFINITIONS UNDER IT.

9      AND THEN, THE FEDERAL CIRCUIT CITED THE BOSS CONTROL

10     DECISION WHICH FOLLOWED THE INVENTOR'S DEFINITION EVEN THOUGH

11     IT APPEARED IN CONNECTION WITH A DESCRIPTION OF THE PREFERRED

12     EMBODIMENT.

13     AND UNLESS YOUR HONOR HAS ANY QUESTIONS, I WILL HAND IT

14     OVER TO MR. HOSIE.

15     **THE COURT:**  WOULD YOU LIKE TO RESPOND?

16     **MR. HOSIE:**  VERY BRIEFLY.

17     IS YAHOO! SAYING FOR A "CONTENT-BASED CACHE" FOR '529

18     CLAIMS THAT CONTENT ENGINE REQUIRES A THIRD-PARTY APPLICATION

19     OR NOT? IF IT IS, IT'S VIOLATING THE DEFINITION IT CITES IN

20     COLUMN TEN, LINE 25 OF '529.

21     IF IT'S NOT, IT'S DEFINING "CONTENT ENGINE" DIFFERENTLY

22     FOR "CONTENT-BASED CACHE" AND "CONTENT SOURCE," YOUR HONOR.

23     AND THAT'S PROBABLY A PERFECT SEGUE TO "CONTENT SOURCE."

24     IF I MAY, BEFORE WE MOVE MASTEROBJECTS HAS AGREED TO DROP

25     THE '326 CLAIMS, SO THAT MOOTS THE UNIFIED CLAIMS.

 1        **THE COURT:**  IS THAT TRUE?

 2        **MR. SMITH:**  HE HAS DROPPED THE '326.  HE HAS TOLD ME

 3   HE WILL.

 4        **THE COURT:**  ALL RIGHT.  GREAT.

 5        **MR. HOSIE:**  YES. WE LOOKED AT THEM.  WE PICK OUR

 6   BATTLES.  THAT'S NOT ONE OF THEM.  SO "UNIFIED" IS OUT.

 7        **THE COURT:**  SO WHERE DOES THAT LEAVE US IN TERMS

 8   OF -- YOU'RE NOT ASKING FOR A CONSTRUCTION?  OR YOU'RE NOT

 9   PRESSING THOSE CLAIMS IN YOUR OVERALL LAWSUIT AS FAR AS WHAT IS

10   BEING INFRINGED?

11        **MR. HOSIE:**  BOTH.

12        **THE COURT:**  ALL RIGHT.  OKAY.

13        **MR. HOSIE:**  BOTH, YOUR HONOR.  NOT PRESSING THE

14   CLAIMS MOOTS THE CONSTRUCTION ON THE "UNIFIED."

15        **THE COURT:**  OKAY.

16        **MR. HOSIE:**  ALL RIGHT.  SO THAT TAKES US TO "CONTENT

17   SOURCE."

18        **THE COURT:**  ALL RIGHT.

19        **MR. HOSIE:**  AND THAT LEAVES, YOU KNOW, FIVE CLAIMS AT

20   ISSUE.  IT'S A PROCESS OF NARROWING TOWARD TRIAL.

21        CONTENT SOURCE. HERE, AGAIN, IT'S CONTENT ENGINE.  THEY

22   WANT TO USE A CONTENT ENGINE.  AND HERE THEY COME UP.  THEY ARE

23   A LITTLE MORE CANDID ABOUT IT.  AND THEY SAY:

24        "CONTENT ENGINE IS A THIRD-PARTY APPLICATION."

25        IT'S ALL OVER THE BRIEF.  THEY ARE EXPLICIT ABOUT IT.

```
1   CONTENT ENGINE REQUIRES A THIRD-PARTY APPLICATION.  THAT'S NOT

2   HOW THE PHRASE "CONTENT ENGINE" IS DEFINED IN '529.  IT'S NOT

3   HOW THE SYSTEM IS DESCRIBED IN THE APPLICATION.

4       THEY ARE TRYING TO PONY IN THIS THIRD-PARTY APPLICATION.

5   AND I BELIEVE NOT JUST FOR "CONTENT SOURCE," BUT BECAUSE

6   "CONTENT-BASED CACHE" ALSO USES THE PHRASE "CONTENT ENGINE," I

7   THINK THAT'S WHAT IS GOING ON FOR "CONTENT ENGINE," TOO.

8       MAYBE THEY WILL TELL ME I'M WRONG.  BUT IF THEY TELL ME

9   I'M WRONG FOR ONE CLAIM, IT'S A THIRD-PARTY APPLICATION.

10          THE COURT:  BUT MORE IMPORTANTLY, IS THE COURT WRONG?

11  AND BASICALLY THE COURT TOOK THIS DIRECTLY FROM THE GLOSSARY.

12      AND WHEN I SAW IT, WHEN I  STARTED READING THE PATENT AND

13  I SAW "GLOSSARY" I SAID:

14          "HALLELUIAH.  THEY NEVER ACTED AS THEIR OWN

15          LEXICOGRAPHER, BUT HERE'S A GLOSSARY."

16          MR. HOSIE:  YES.

17          THE COURT:  AND I THOUGHT -- TELL ME WHERE I'M

18  WRONG -- THAT TAKING THE GLOSSARY DEFINITION, WHICH IS WHAT I

19  TENTATIVELY ACCEPTED, SEEMS TO BE WHAT THE CASES MANDATE.

20          MR. HOSIE:  AND, YOUR HONOR, I SHOULD HAVE STARTED BY

21  SAYING WE AGREE WITH THE COURT'S TENTATIVE:

22          "A SERVER COMPUTER THAT PROVIDES THE DATA THAT IS

23          ACCESSED BY THE SYSTEM."

24          OKAY?

25          THE COURT:  ALL RIGHT.
```

1        **MR. HOSIE:**  THE ISSUE WE HAVE -- AND THAT'S NOT A

2   CONTENT ENGINE.  IT DOESN'T HAVE ALL THE WEIRD TERMS IN IT.

3   AND IT DOESN'T GRAFT THIS THIRD-PARTY APPLICATION INTO THE

4   DEFINITION, NOR SHOULD IT.

5        THE ISSUE ON THE GLOSSARY, YOUR HONOR -- AND I REALIZE

6   THAT THE TIDE MAY HAVE RECEDED ON THIS FOR MY CLIENT -- THE

7   GLOSSARY IS FOR PREFERRED EMBODIMENT.  THE QUESTOBJECT SYSTEM,

8   THAT'S WHY IT'S FULL OF ALL THESE WEIRD PHRASES LIKE "QUESTLET"

9   AND "QUESTSERVER."

10       IT'S LIKE "GET SHORTY."  YOU KNOW, WHO COMES UP WITH THESE

11  NAMES?

12       AND I APPRECIATE THAT'S A MACRO ISSUE, BUT WE ALWAYS --

13  AND WE TODAY WITH CONVICTION, YOUR HONOR -- LOOK AT THAT AND

14  SAY:

15          "LOOK, IT'S A GLOSSARY FOR THE PREFERRED EMBODIMENT.

16       THE PATENT SAYS THAT EXPLICITLY."

17       AND THIS IS A PATENT THAT'S STRUCTURED SO THERE ARE

18  GENERAL CLAIMS AND THERE'S ONE SPECIFIC EMBODIMENT TO PROVE

19  ENABLEMENT.  AND THAT'S THE QUESTOBJECTS SYSTEM.

20       THE CLAIMS ARE BROAD.  AND SO WE'VE BEEN FIGHTING WITH

21  YAHOO! ABOUT THAT.

22       THAT IS THE GLOSSARY FOR PREFERRED EMBODIMENT OR NOT. THAT

23  REALLY IS AN ONGOING ISSUE.  BUT IT'S BEEN FULLY BRIEFED, AND I

24  WON'T CONTINUE FURTHER ON THAT.

25       BUT EVEN WITHIN THE GLOSSARY, YOUR HONOR -- 0AND THIS IS

1    SORT OF THE NARROW VERSUS MACRO ISSUE -- THE COURT'S RIGHT.

2    IT'S A SERVER COMPUTER THAT PROVIDES THE DATA THAT IS ACCESSED

3    BY THE SYSTEM.

4         THAT'S WHAT '529 SAYS. THAT'S WHAT THE CLAIMS SAY.  THAT'S

5    WHAT THE SPECIFICATION SAYS.  AND IT CAN BE ANYTHING.

6         AND ON PAGE 13, YOUR HONOR, "CONTENT ENGINE" IS NOT

7    LIMITED TO A THIRD-PARTY APPLICATION.  YOU CAN SEE IT'S JUST --

8    IT'S A DYNAMIC DATA SOURCE THAT PROVIDES CONTENT.

9         DYNAMIC DATA DENOTES STATIC DATA.  IT CAN BE ANYTHING THAT

10   GIVES YOU CONTENT. IT CAN BE A SERVER THAT HAS WEATHER.  IT CAN

11   BE A SERVER THAT HAS PRADA SHOES. IT'S ANY CONTENT SOURCE.

12        IT'S EXPLICITLY SO DESCRIBED IN THE PATENT.

13        **THE COURT:**  COUNSEL.

14        **MR. SMITH:**  YOUR HONOR, IF I MAY I WOULD LIKE TO HAND

15   IT OVER TO MY ASSOCIATE, MATTHEW CANNON, SO HE KIND ARGUE AT

16   HIS FIRST MARKMAN HEARING.

17        **THE COURT:**  VERY WELL.

18     NO PRESSURE, RIGHT?

19        **MR. CANNON:**  NONE AT ALL.

20        **THE COURT:**  ALL RIGHT.  YOU SURE YOU WANT TO DO THIS?

21   PATENT LAW.  I DON'T MEAN "THIS." BUT JUST KIDDING.  GO AHEAD.

22        **MR. CANNON:**  I THINK THAT SHIP MAY HAVE SAILED AT

23   THIS POINT, YOUR HONOR.

24        **THE COURT:**  RIGHT.

25        **MR. CANNON:**  THE ISSUE WITH CONTENT SOURCE FROM

1    YAHOO!'S PERSPECTIVE IS NOT SIMPLY THE CONTENT ENGINE ISSUE,

2    BUT THAT GOES TO THE LARGER ISSUE OF WHAT NEEDS TO BE

3    INCORPORATED FROM THE SPECIFICATION INTO THE DEFINITION OF

4    "CONTENT SOURCE."

5        AND YAHOO!'S PROPOSED CONSTRUCTION ORIGINALLY INCLUDED

6    WHAT YAHOO! SAW AS ALL OF THE NECESSARY COMPONENTS OF THE

7    CONTENT SOURCE FROM THE SPECIFICATION.

8        THE COURT'S CONSTRUCTION IN THE TENTATIVE RULING BY

9    CONTRAST USES WHAT APPEARS TO BE ONLY THE FIRST SENTENCE, THE

10   FIRST PART OF THE FIRST SENTENCE OF THE DEFINITION OF "CONTENT

11   SOURCE" IN THE GLOSSARY OF THE '326 PATENT.

12       THE PROBLEM WITH DOING SO IS THAT IT MAKES THE TERM

13   "CONTENT SOURCE" SYNONOMOUS WITH A GENERIC SERVER.  IF A

14   CONTENT SOURCE IS A COMPUTER THAT PROVIDES DATA, THAT'S WHAT A

15   SERVER DOES.  A SERVER INHERENTLY SERVES DATA TO CLIENTS THAT

16   WANT TO ACCESS IT OFF OF THE CENTRAL SERVER.

17       SO BY DEFINING A "CONTENT SOURCE" AS A SERVER COMPUTER

18   THAT PROVIDES DATA, A CONTENT SOURCE BECOMES SYNONOMOUS WITH

19   ANY OTHER OLD SERVER.

20       BUT THE CLAIMS ARE SPECIFIC IN DISTINGUISHING BETWEEN

21   SERVERS AND CONTENT SOURCES.  AND WE'VE QUOTED ONE EXAMPLE

22   THERE FROM THE '529 PATENT WHERE IN THE DISJUNCTIVE THE

23   PATENTEE REFERS TO A SERVER AND ONE OR MORE CONTENT SOURCES AS

24   SEPARATE THINGS.

25       THE CLAIM DOESN'T SAY THAT INFORMATION CAN BE PREVIOUSLY

1  RETRIEVED FROM THE SERVER OR FROM ONE OR MORE OTHER SERVERS.

2  IT'S A CONTENT SOURCE, SPECIFICALLY.

3       AND MASTEROBJECTS THEN WENT ON TO DEFINE "CONTENT SOURCE"

4  VERY SPECIFICALLY IN THE GLOSSARY IN THE '326 PATENT.

5       THE COURT IN ADOPTING THE SHORTER VERSION OF THE

6  CONSTRUCTION APPEARED TO RAISE TWO ISSUES WITH YAHOO!'S

7  INCLUSION OF THAT EXTRA LANGUAGE FROM THE GLOSSARY OF THE '326

8  PATENT.  THE FIRST WAS THAT IT SEEMED THAT YAHOO! DIDN'T HAVE A

9  REASON FOR CHOOSING ONLY THE LANGUAGE THAT IT DID FROM THE

10 LARGER DEFINITION.

11      AND THEN, THE SECOND ISSUE WAS THAT YAHOO!'S INCLUSION OF

12 THE CONTENT ENGINE WAS PROBLEMATIC FOR THE REASONS THAT COUNSEL

13 HAVE BEEN DISCUSSING.

14      REVIEWING THE '326 SPECIFICATION, HOWEVER, THE DEFINITION

15 OF "CONTENT SOURCE" THERE, YAHOO! CHOSE TO INCLUDE THE FIRST

16 TWO SENTENCES OF THAT PARAGRAPH INTENTIONALLY BECAUSE THOSE ARE

17 THE PARTS OF THAT DEFINITION THAT ARE PHRASED IN MANDATORY

18 TERMS.

19           "A CONTENT SOURCE IS A SERVER COMPUTER THAT PROVIDES

20          THE DATA THAT IS ACCESSED BY THE SYSTEM.  AND THE CONTENT

21          SOURCE MAKES ITS DATA AVAILABLE USING THE CONTENT ENGINE."

22      THE OTHER PARTS OF THAT PARAGRAPH ARE PERMISSIVE FEATURES.

23 THEY ARE THINGS THAT CAN BE USED IN CERTAIN EMBODIMENTS.  SO

24 FOR BEST PERFORMANCE A CONTENT SOURCE CAN BE ON THE SAME LAN.

25 IT COULD EVEN BE ON THE SAME SERVER.  THE SERVER CAN BE LINKED

1   TO A NUMBER OF OTHER CONTENT SOURCES.  ALL OF THOSE OTHER PARTS

2   OF THAT PARAGRAPH ARE OPTIONAL FEATURES. OF A CONTENT SOURCE.

3         **THE COURT:**  EXCEPT THE ONE THAT SAYS"MUST".

4         "FOR BEST PERFORMANCE THE CONTENT SOURCE MUST BE

5      LOCATED ON THE SAME LAN AS THE QUESTOBJECTS SERVER."

6      AND THEN, IT GOES ON TO SAY:

7         "AND COULD -- AND COULD EVEN BE HOSTED ON THE VERY

8      SAME SERVER COMPUTER."

9         **MR. CANNON:**  RIGHT.  THE OPERATIVE PART FROM YAHOO!'S

10  PERSPECTIVE IS THE FIRST PART OF THAT SENTENCE:

11        "FOR BEST PERFORMANCE IT CAN BE LOCATED ON THE SAME

12     LAN."

13     SO IN A SYSTEM THAT IS NOT OPTIMIZED, OR FOR WHATEVER

14  OTHER IMPLEMENTATION REASONS, THAT'S NOT A NECESSARY FEATURE OF

15  THE CONTENT SOURCE AS WE READ THIS PART OF THE SPECIFICATION.

16     BUT LATER ON IN THE SPECIFICATION, THE SECOND PART OF THE

17  COURT'S ISSUE, THE INCLUSION OF THE CONTENT ENGINE DESCRIPTION

18  THERE.  AND WE'VE INCLUDED JUST ONE EXAMPLE WHERE THERE'S A

19  "THIS INVENTION" STATEMENT THAT MAKES REFERENCE TO THE DATA

20  FROM THE CONTENT SOURCE AS BEING MADE AVAILABLE THROUGH THE

21  CONTENT ENGINE.  THE CONTENT ENGINE THE ONLY WAY THAT DATA CAN

22  COME FROM A CONTENT SOURCE INTO THE SYSTEM.

23     AND THAT'S WHY IT'S A MANDATORY FEATURE OF THE DEFINITION

24  OF "CONTENT SOURCE" PROVIDED IN THE GLOSSARY.

25     THIS, OF COURSE, GETS TO EXACTLY THE SAME LEGAL ISSUE THAT

```
1    COUNSEL HAS BELABORED AT THIS POINT.  AND I DON'T MEAN TO BEAT

2    A DEAD HORSE, BUT IT'S BY INCLUDING THE CONTENT ENGINE

3    DEFINITION WE NEED TO LOOK TO "CONTENT ENGINE" TO KNOW WHAT

4    NEEDS TO BE INCLUDED WITHIN THE "CONTENT SOURCE."

5         AND YAHOO! DOES SO BY LOOKING TO THE EXPLICIT DEFINITION

6    OF "CONTENT ENGINE" IN THE '326 PATENT, WHICH IS THE SAME PLACE

7    YOU GET THE EXPLICIT DEFINITION OF A "CONTENT SOURCE."

8         AND A "CONTENT ENGINE" IS DEFINED AS:

9              "A THIRD-PARTY APPLICATION THAT RUNS ON THE CONTENT

10             SOURCE -- THAT RUNS ON THE CONTENT SOURCE THAT IS CAPABLE

11             OF PERFORMING STRING-BASED QUERIES AND RETURNING STRING

12             FORMATTED ANSWERS TO THE QUESTOBJECTS SYSTEM."

13        AND THEN, THE "CONTENT ENGINE" DEFINITION GOES ON TO GIVE

14   A VARIETY OF EXAMPLES OF WHAT THOSE MIGHT BE.

15        BUT THE CONTENT ENGINE IS A NECESSARY PART OF THE CONTENT

16   SOURCE, OF THE DEFINITION OF A CONTENT SOURCE, BECAUSE IT'S THE

17   ONLY WAY DATA GETS FROM THE CONTENT SOURCE INTO THE SYSTEM.

18        SO FOR THOSE REASONS WE THINK THOSE ARE MANDATORY PARTS OF

19   THE DEFINITION OF "CONTENT SOURCE" THAT NEED TO BE INCLUDED

20   WITHIN THE CONSTRUCTION.

21             THE COURT:  ALL RIGHT.

22        MR. HOSIE?

23             MR. HOSIE:  NOTHING FURTHER, YOUR HONOR, ON THIS.

24             THE COURT:  ALL RIGHT.  LET'S MOVE ON TO "SESSION"

25   AND "USER SESSION."
```

1        MR. HOSIE.

2            **MR. HOSIE:**  THANK YOU, YOUR HONOR.

3        THIS TAKES US TO TAB 14, "SESSION."

4        THIS IS A PATENT ABOUT SEARCH AND SEARCH SESSIONS.  NOT TO

5   THE BELABOR IT, BUT YOU SIT DOWN AND START TYPING.  YOU'RE

6   LOOKING FOR SOMETHING.  MAYBE YOU WANT TO KNOW WHAT THE WEATHER

7   IN SUNNYVALE IS LIKE FOR A LUNCH MEETING.

8        SO YOU START TYPING. THAT'S THE WAY THE PATENT USES THE

9   WORD "SESSION." IT'S A RELATIONSHIP MAINTAINED BETWEEN A CLIENT

10  AND A SERVER.

11       AND AS YOU TYPE IN YOUR SEARCH REQUEST, AND THE SERVER

12  STARTS TO SPIT BACK STUFF TO YOU ASYNCHRONOUSLY.

13       SO, YOU KNOW, ROXY MUSIC, R-O-X. AND, YOU KNOW, THE

14  RESULTS GET INCREASINGLY MORE POINTED AS YOU GET INCREASINGLY

15  LENGTHY IN YOUR CHARACTERS.  THAT'S THE MEANING OF THE PHRASE

16  "SESSION."

17       IT'S SO DESCRIBED IN THE CLAIMS:  "SEARCH SESSION." WE

18  THINK THE PROSECUTION HISTORY IS IN ACCORD.

19       THE COURT'S CONSTRUCTION -- I THINK THE COURT'S

20  CONSTRUCTION IS ESSENTIALLY RIGHT, YOUR HONOR, WITH ONE

21  AMBIGUITY. WHAT DOES IT MEAN TO SAY THE SERVER RECOGNIZES WHEN

22  THE USER ENTERS A PARTICULAR SEARCH QUERY?  IF IT MEANS THAT,

23  YOU KNOW, IF YOU TYPE "R" -- YOU'RE LOOKING FOR ROXY MUSIC.

24  AND I USE THAT JUST BECAUSE IT'S IN THE  -- "R", AND THEN "R-O"

25  EVERY TIME YOU HIT A NEW CHARACTER THE SERVER WILL SEND YOU

1   STUFF, AND DIFFERENT STUFF, AND INCREASINGLY RELEVANT STUFF.

2        THAT'S HOW IT WORKS.  THAT IS RECOGNIZING, WE THINK, THE

3   USER ENTERS A PARTICULAR SEARCH QUERY.

4        WE'RE CONCERNED HERE BECAUSE WE THINK THAT YAHOO! WANTS TO

5   SUGGEST THAT THIS REQUIRES MAINTAINING STATE IN A COMPUTER

6   SCIENCE WAY.

7        NOW, MAINTAINING STATE IS KEEPING A RECORD, A HISTORY, AND

8   KNOWING, YOU KNOW, YOUR PAST HISTORY.  THIS GOES BACK TO THE

9   VERY FIRST THING WE TALKED ABOUT TODAY:  ASYNCHRONOUS

10  CONNECTION AND WHETHER THE SYSTEM HAS TO KNOW WHO YOU ARE AND

11  WHAT YOU'VE DONE IN THE PAST.

12       YOU KNOW, SO THEN IT MAINTAINS STATE WITH YOU.  IT OPENS A

13  SESSION.  AND THIS PATENT DID NOT USE SESSION TO MAINTAIN

14  STATE. AND WE THINK IT WAS APPROPRIATE THAT THE COURT TOOK THE

15  NOTION OF MAINTAINING STATE OUT OF YAHOO!'S CONSTRUCTION.

16  WE'RE JUST CONCERNED THAT YAHOO! MAY ARGUE THAT THIS RECOGNIZES

17  WHEN A USER ENTERS HIS BACK DOOR WAY OF MAINTAINING STATE BACK

18  IN.

19       BUT MAYBE I'M BEING AN ALARMIST, AND I'M SHORTLY ABOUT TO

20  FIND OUT.

21            **THE COURT:**  COUNSEL.

22            **MR. SMITH:**  THANK YOU.

23       SO, YOUR HONOR OFFERED THE TENTATIVE CONSTRUCTION:

24       "A RELATIONSHIP MAINTAINED BETWEEN A CLIENT AND A SERVER

25       IN WHICH THE SERVER RECOGNIZES WHEN THE USER ENTERS A

1        PARTICULAR SEARCH QUERY BY ENTERING CONSECUTIVE

2        CHARACTERS."

3        I THINK MR. HOSIE DESCRIBED THIS HAS SOMEONE SITTING DOWN

4   AT A MUSIC SEARCH SERVICE AND LOOKING FOR "ROXY MUSIC" AND

5   TYPING AN "R" AND GETTING SOME RESULTS.  TYPING AN "O" AND

6   GETTING SOME UPDATED RESULTS AND SO ON.

7        THERE ARE TWO KEY PROBLEMS WITH THAT CONSTRUCTION, YOUR

8   HONOR.  FIRST, AS I'M GOING TO SHOW YOU DURING PROSECUTION

9   MASTEROBJECTS DISCLAIMED A MUSIC SEARCH SERVICE THAT PERFORMED

10  EXACTLY AS MR. HOSIE DESCRIBES THE SESSION AND SAID THAT WAS A

11  SESSIONLESS SYSTEM, AND IS NOW TRYING TO READ THAT IN, THE

12  EXACT EMBODIMENT THAT IT SAID WAS SESSIONLESS IN THE PRIOR ART.

13       NOW, I'LL GIVE A BRIEF EXPLANATION OF HOW THAT IS IN A

14  MOMENT.

15       THE OTHER PROBLEM IS I ACTUALLY AGREE WITH MR. HOSIE THAT

16  THE RECOGNITION ISSUE IS A LITTLE BIT VAGUE.  WHAT DOES IT MEAN

17  TO RECOGNIZE?

18       AND I THINK WHAT THE PROSECUTION HISTORY DEFINES A

19  RECOGNITION AS BEING AS LOOKING TO THE USER'S PAST HISTORY OF

20  QUERIES AND RESULTS.  AND I'LL SHOW THAT THROUGH THE

21  PROSECUTION HISTORY --

22       **THE COURT:**  SO WHEN YAHOO! USED THE TERM IN WHICH THE

23  SERVER RECOGNIZES WHEN SUBSEQUENT REQUESTS ORIGINATE FROM THE

24  SAME USER, ET CETERA, ET CETERA, YOU'RE SAYING THAT THE WAY

25  YAHOO! WAS USING IT WAS NOT AMBIGUOUS, BUT THE WAY THE COURT IS

1   USING IS IT AMBIGUOUS, THE TERM "RECOGNIZES"?

2        **MR. SMITH:** RIGHT. WELL, I BELIEVE "RECOGNIZES" IS

3   SOMEWHAT AMBIGUOUS, BECAUSE IF YOU CAN IMAGINE ANY TIME A

4   CLIENT SENDS A MESSAGE TO A SERVER, FOR EXAMPLE, IT WILL HAVE

5   AN IP ADDRESS WHICH UNIQUELY IDENTIFIES THE CLIENT. AND THE

6   SERVER WILL SEE THAT, AND THAT'S HOW IT KNOWS WHO TO SEND THE

7   RESPONSE TO.

8      SO TO SOME EXTENT ANY NETWORK SYSTEM THE SERVER IS GOING

9   TO HAVE A RECOGNITION OF THE CLIENT SENDING MESSAGES AND WHICH

10   CLIENT IT'S GOING TO.

11      SO THAT RECOGNITION, THAT CLEARLY CAN'T BE WHAT A SESSION

12   IS, BECAUSE EVERY CLIENT'S SYSTEM WOULD READ ON THAT. SO I

13   THINK THERE IS SOME AMBIGUITY. AND THE PROSECUTION HISTORY

14   DOES, HOWEVER, DEFINE THE RECOGNITION WE'RE TALKING ABOUT AS A

15   RECOGNITION THAT RELIES ON THE USER HISTORY.

16      THE SECOND -- THE NEXT OBJECTION I HAVE IS THAT YOUR HONOR

17   DOES NOT REQUIRE A SESSION TO BE A RELATIONSHIP BETWEEN A

18   CLIENT WITH A SINGLE SPECIFIC SERVER. THIS MIGHT BE INCLUDED IN

19   YOUR HONOR'S CONSTRUCTION. IT'S NOT CLEAR.

20      YOUR HONOR STATES IT'S A RELATIONSHIP BETWEEN A CLIENT AND

21   A SERVER. AS LONG AS "A SERVER" MUST BE ONE SERVER, THEN THAT

22   PART OF THE CONSTRUCTION IS CORRECT, AND THE PROSECUTION

23   HISTORY MANDATES THAT.

24      BUT TO THE EXTENT THAT COULD BE READ TO READ A

25   RELATIONSHIP BETWEEN A CLIENT AND ONE OR MORE SERVERS, THEN

1   THAT IS CLEARLY DISCLAIMED IN THE PROSECUTION HISTORY, AND I'LL

2   SHOW THAT.

3        **THE COURT:**  SO YOU'RE SAYING THE TERM "A" MEANS "ONE

4   BE OR MORE," MAY BE ONE OR MORE?

5        **MR. SMITH:**  WELL, THERE ARE -- IN PATENT LAW LINGO

6   WHEN YOU SAY THE WORD "A" THERE'S A PRESUMPTION THAT IT MEANS

7   ONE OR MORE. AND SO THAT ONE OR MORE --

8        **THE COURT:**  THAT'S WHY I LOVE PATENT CASES.

9   EVERYTHING IS SO CLEAR.

10        **MR. SMITH:**  THAT IS WHY I WANT TO HEAD OFF SUMMARY

11   JUDGMENT, BECAUSE IF WE DON'T RESOLVE IT NOW I GUARANTEE THE

12   PARTIES WILL ARGUE ABOUT IT, WHETHER "A" MEANS ONE OR MORE.

13        **THE COURT:**  THAT'S WHY WE'RE HAVING THIS DISCUSSION.

14        **MR. SMITH:**  THAT'S AN AMBIGUOUS PART.  I THINK YOUR

15   HONOR SHOULD CLARIFY THAT POINT.

16        **THE COURT:**  SO HOW WOULD YOU PROPOSE THAT --

17        **MR. SMITH:**  A SINGLE SERVER.

18   NOW I WANT TO TALK ABOUT THE PROSECUTION HISTORY AND HOW

19   MASTEROBJECTS HAS ACTUALLY DISCLAIMED THE EXACT MUSIC SEARCH

20   EMBODIMENT OF "SESSION" THAT MR. HOSIE JUST DESCRIBED.

21   NOW, DURING PROSECUTION MASTEROBJECTS RECEIVED A REJECTION

22   IN LIGHT OF A PRIOR ART REFERENCE CALLED "SPAEY."  AND I HAVE

23   COPIES OF THE PATENT APPLICATION, IF YOUR HONOR WOULD LIKE IT.

24   I CAN HAND THEM UP, OR I CAN JUST SHOW YOU THE IMAGE.

25        **THE COURT:**  WHY DON'T YOU SHOW ME THE IMAGE?  IT'S IN

1  THE RECORD, I ASSUME?

2      **MR. SMITH:**  WELL, IT'S CITED DURING THE PROSECUTION

3  HISTORY AND ON THE FACE OF THE PATENT.  AND THAT'S CONSIDERED

4  AS A MATTER OF LAW PART OF THE INTRINSIC EVIDENCE.

5      **THE COURT:**  ALL RIGHT.  WHY DON'T YOU JUST PUT UP THE

6  IMAGES?

7      **MR. SMITH:**  SURE.  BUT, FIRST, THIS IS HOW

8  MASTEROBJECTS RESPONDED TO THE REJECTION.  IT STATED AFTER PTO

9  REJECTED IN THE LIGHT OF SPAEY, MASTEROBJECTS STATED:

10      "AS FURTHER DESCRIBED THEREIN" --

11      **THE COURT:**  SLOW DOWN.

12      **MR. SMITH:**  I AM SORRY.  IT'S A BAD HABIT OF MINE.

13  MASTEROBJECTS STATED WHEN IT WAS DESCRIBING HOW SPAEY

14  OPERATED TO THE PTO, IT STATED:

15      "AS FURTHER DESCRIBED THEREIN, THE SERVER IS

16      SESSIONLESS, I.E. NO INFORMATION ABOUT PAST REQUESTS IS

17      REQUIRED TO PROCESS THE CURRENT REQUEST.  THIS MEANS

18      SEVERAL SERVERS CAN PROCESS INCOMING REQUESTS IN

19      PARALLEL."

20  AND, NOTABLY, MASTEROBJECTS USED THE TERM "I.E.," WHICH AS

21  YOUR HONOR ACTUALLY PREVIOUSLY NOTED IN THIS HEARING IN EDWARDS

22  LIFESCIENCES THERE'S A PRESUMPTION THAT MEANS YOU'RE DEFINING A

23  TERM.

24  SO HERE MASTEROBJECTS IS DEFINING WHAT "SESSIONLESS" MEANS

25  AND IS SAYING:

1            "OUR SYSTEM HAS A SESSION, SO IT MUST RELY ON SOME

2        PAST HISTORY WHEN IT FINDS RESULTS, BECAUSE WE'RE NOT

3        SESSIONLESS."

4        AND THEN, IN ANOTHER PARAGRAPH OF THE SAME PART OF THE

5    PROSECUTION HISTORY IT BASICALLY SAYS THE SAME THING.  I'M NOT

6    GOING TO READ IT.  IT'S ESSENTIALLY THE SAME DESCRIPTION OF

7    SPAEY, SAYING THAT:

8            "IT'S SESSIONLESS, AND WE DON'T DO THAT."

9        BUT LET'S TAKE A LOOK AT ACTUALLY WHAT SPAEY SAYS, WHICH I

10   THINK IS REALLY CRITICAL FOR SHOWING THAT MR. HOSIE'S

11   CONSTRUCTION AND THE COURT'S TENTATIVE RULING IS CLEARLY

12   INCORRECT.

13       SO HERE'S WHAT SPAEY SAYS, AND THIS IS A QUOTE.  SPAEY

14   ACTUALLY DISCLOSES INCREMENTAL SEARCH AND IT DESCRIBES

15   "INCREMENTAL SEARCH" AS WHAT MR. HOSIE JUST DESCRIBED

16   HAPPENING.

17           "INCREMENTAL SEARCH, I.E., THE SEARCH PROCESS ON THE

18       SERVER IS TRIGGERED AS SOON AS A CHARACTER IS TYPED AND

19       NARROWS DOWN SYNCHRONOUSLY WITH EACH ADDITIONAL

20       CHARACTER."

21       SO IT'S DESCRIBING A VERY SIMILAR SYSTEM TO MASTEROBJECTS'

22   PATENT.

23       SO AT THE BOTTOM I HAVE A QUOTE OF WHAT YOUR HONOR'S

24   CONSTRUCTION IS:

25           "RECOGNIZES WHEN A USER ENTERS A PARTICULAR SEARCH

1      QUERY BY ENTERING CONSECUTIVE CHARACTERS."

2      THAT IS EXACTLY WHAT SPAEY IS DESCRIBING HERE, AND THAT'S

3    EXACTLY WHAT MASTEROBJECTS SAID WAS SESSIONLESS.

4      SO ACTUALLY NOW THERE'S ACTUALLY SOME INTERESTING IMAGES

5    FROM SPAEY.  THEY ARE A LITTLE BLURRY, BECAUSE SPAEY'S IMAGES

6    ARE.  THE PATENT HAS GOT BLURRY IMAGES.  BUT I CAN EXPLAIN WHAT

7    IS GOING ON HERE.

8      THIS IS A BROWSER (INDICATING), AND IT'S ACCESSING A MUSIC

9    CD STORE FOR A USER TO SEARCH FOR COMPACT DISKS THEY WANT TO

10   BUY.  AND THIS EXAMPLE FROM SPAEY, IN FIGURE 8A THE USER ENTERS

11   AN "R" AND RECEIVES RESULTS.

12     THE USER ENTERS AN "R" AND RECEIVES RESULTS. AND IN THIS

13   EXAMPLE THE USER ENTERS AN "R" AND GETS RESULTS FOR THE POPULAR

14   BANDS "RADIOHEAD" AND "RAGE AGAINST THE MACHINE."  IT'S A

15   LITTLE DIFFICULT TO READ, BUT THAT'S WHAT THE LEFT COLUMN SAYS.

16     NEXT FIGURE, THE USER THEN ENTERS AN "E" AND THE RESULTS

17   CHANGE TO THE POPULAR BAND "RED HOT CHILI PEPPERS."

18     AND THEN, IN FIGURE 8C OF SPAEY THE USER ENTERS THE THIRD

19   CHARACTER, ANOTHER E, AND THE RESULTS CHANGE TO "LOU REED.

20     WE HAVE HERE SPAEY PERFORMING EXACTLY AS YOUR HONOR'S

21   CONSTRUCTION OF "SESSION" AND EXACTLY AS MR. HOSIE CONTENDS YOU

22   SHOULD CONSTRUE IT.  BUT MASTEROBJECTS SAID THIS WAS NOT A

23   SESSION. SO THE COURT'S CONSTRUCTION IS JUST CLEARLY INCORRECT.

24     NOW, DURING --

25        **THE COURT:**  THIS IS DIFFERENT THAN THE OTHER

1  INVENTIONS WE'VE BEEN TALKING ABOUT, THEN, BECAUSE THE OTHER

2  INVENTIONS WERE EXACTLY WHAT APPARENTLY THIS PRIOR ART IS WHICH

3  IS THE TYPING OF CHARACTERS GIVING YOU INCREASINGLY SPECIFIC

4  FEEDBACK.

5         MR. SMITH:  SO THAT'S A VERY INTERESTING QUESTION. MY

6  UNDERSTANDING OF SPAEY IS THAT ALTHOUGH IT DID NOT HAVE THE

7  ASYNCHRONOUS PROTOCOL, SO I'M SURE MR. HOSIE WILL POINT OUT

8  THAT SPAEY IS SYNCHRONOUS AND ITS INVENTION IS ASYNCHRONOUS.

9       WHAT IS CRITICAL HERE IS MASTEROBJECTS DISCLAIMED IT BASED

10  ON THE SESSION, NOT BASED ON ASYNCHRONICITY.  OR EVEN IF THEY

11  DID IT ON BOTH BASES IT'S BOUND BY BOTH.

12       THEY SAID IT'S SESSIONLESS, AND THEREFORE IT'S BOUND BY

13  IT, EVEN IF IT'S SYNCHRONOUS.

14       BUT MASTEROBJECTS ALSO RECEIVED ITS REJECTION FROM THE PTO

15  IN LIGHT OF A REFERENCE CALLED "PURCELL."  AND IT ARGUED THAT

16  PURCELL DOES NOT DISCLOSE A SESSION-BASED ENVIRONMENT BECAUSE

17  IN PURCELL THE CLIENT WASN'T TIED TO A SINGLE SERVER.

18       SO I'VE HIGHLIGHTED THE REALLY CRITICAL PART HERE OF WHAT

19  MASTEROBJECTS SAID ABOUT PURCELL.  BUT BASICALLY WHAT IT'S

20  SAYING IS THAT PURCELL, THE QUERY GOT SENT FROM THE CLIENT TO

21  MULTIPLE SERVERS, AND THEREFORE IT'S NOT A SESSION.  BECAUSE IN

22  A SESSION, AS STATES HERE:

23         "IN A SESSION, QUERIES ARE CONTAINED WITHIN A SINGLE

24       SESSION BETWEEN A SINGLE CLIENT AND A SINGLE SERVER."

25       SO A SESSION HAS TO BE A RELATIONSHIP BETWEEN A SINGLE

1    CLIENT AND A SINGLE SERVER, NOT A SYSTEM WHERE A CLIENT SENDS

2    QUERIES TO MULTIPLE SERVERS, BECAUSE THAT'S WHAT PURCELL DID

3    AND MASTEROBJECTS SAID THAT'S NOT SESSION-BASED.

4        SO THAT'S WHERE THE SINGLE PART OF OUR CONSTRUCTION COMES

5    FROM.

6        AND THEN, ALSO IN THE SAME PART OF THE PROSECUTION HISTORY

7    MASTEROBJECTS ALSO ARGUES AROUND PURCELL BY EXPLAINING WHAT IT

8    MEANS BY A SESSION-BASED PROTOCOL.  AND IT SAYS:

9            "WELL, A SESSION-BASED PROTOCOL IS ONE IN WHICH THE

10           SERVER RECOGNIZES WHEN SUBSEQUENT REQUESTS ORIGINATE AT

11           THE SAME CLIENT, THUS IN RESPONDING TO AN INPUT CHARACTER

12           THE SERVER RECEIVES FROM THE CLIENT THE SERVER CAN USE THE

13           HISTORY OF DATA THAT HAS ALREADY BEEN SENT TO OR FROM THE

14           CLIENT."

15       SO AT A MINIMUM THE SERVER HAS TO BE ABLE TO USE THAT

16   PRIOR USER HISTORY IN FORMING THE BEST RESULTS.

17       SO MASTEROBJECTS IN THE BRIEF OFFERS A COUPLE OF

18   EXPLANATIONS TO THE PROSECUTION HISTORY.  IN MY OPINION THEY DO

19   NOT MAKE ANY SENSE.

20       FIRST, MASTEROBJECTS ARGUES THAT SPAEY DIDN'T HAVE A

21   SEARCH SESSION.  AND THEY SAY SOMETHING ALONG THE LINES OF:

22           "I.E., SITING DOWN AND TYPING CONSECUTIVE QUERIES."

23       WELL, I'VE SHOWN THIS IS ACTUALLY FALSE.

24       FIRST, IT'S FALSE AS A MATTER OF FACT ABOUT WHAT SPAEY

25   ACTUALLY DISCLOSES.  AND SECOND, IT'S FALSE BECAUSE

1    MASTEROBJECTS NEVER MADE THAT ARGUMENT TO THE PTO.

2        THEN, WITH RESPECT TO PURCELL, MASTEROBJECTS ARGUES:

3            "WELL, THEY ALSO DISTINGUISH PURCELL BECAUSE THAT WAS

4        ASYNCHRONOUS."

5        OURS IS ASYNCHRONOUS.  AND THEY DID MAKE THAT ARGUMENT.

6    BUT THEY REALLY MADE TWO ARGUMENTS.  AS YOU SAW, THEY ALSO

7    ARGUED IT'S NOT SESSION-BASED.  AND WHEN YOU -- AND THEY ARGUED

8    TWO GROUNDS FOR DISTINGUISHING PRIOR ART.  IT'S NOT THAT YOU'RE

9    NOT BOUND BY EITHER.  IN FACT, YOU ARE BOUND BY BOTH.  AND THE

10   LAW IS CLEAR ON THAT.

11       AND, FINALLY, THE SPECIFICATION REALLY CONFIRMS YAHOO!'S

12   CONSTRUCTION OF "SESSION." AND HERE'S A QUOTE FROM THE

13   SPECIFICATION THAT REALLY RECITES THAT THE SERVER HAS TO RELY

14   ON THE HISTORY OF DATA THAT HAS BEEN SENT TO AND FROM THE

15   CURRENT USER TO HAVE A SESSION.

16       MASTEROBJECTS IN ITS BRIEF STATES THIS IS JUST ONE

17   EMBODIMENT OF THE INVENTION.  AS I THINK I'VE SHOWN DURING

18   PROSECUTION MASTEROBJECTS NARROWED ITS INVENTION TO THIS

19   EMBODIMENT.  AS THE LAW MAKES CLEAR, INCLUDING EDWARDS

20   LIFESCIENCES THAT OFTEN HAPPENS.

21       AND HERE'S A QUOTE FROM EDWARDS LIFESCIENCES:

22           "WE WILL ADOPT AN ALTERNATIVE MEANING FOR A CLAIM IF

23       THE INTRINSIC EVIDENCE SHOWS THAT THE PATENTEE

24       DISTINGUISHED THAT TERM FROM THE PRIOR ART ON THE BASIS OF

25       A PARTICULAR EMBODIMENT."

1      SO TO THE EXTENT THAT DESCRIPTION FROM THE SPECIFICATION

2  MERELY DESCRIBES AN EMBODIMENT, I THINK I'VE SHOWN THAT THROUGH

3  PURCELL AND SPAEY MASTEROBJECTS DISTINGUISHED THE PRIOR ART

4  BASED ON THAT EMBODIMENT AND IT'S NOW RESTRICTED TO THAT

5  MEANING OF "SESSION."

6          **THE COURT:**  WHERE IN YOUR PROPOSED CONSTRUCTION IS

7  THERE THE STATEMENT:

8              "STATE MAINTAINED BETWEEN A CLIENT AND SINGLE

9          SERVER"?

10     MR. HOSIE SAID "STATE" IS A TERM OF ART IN THE COMPUTER

11  WHOLE.  DOES THAT MEAN?

12         **MR. SMITH:**  I HAVE NO OBJECTION TO USING

13  "RELATIONSHIP," YOUR HONOR.

14         **THE COURT:**  ALL RIGHT. ALL RIGHT.

15     SO WE'VE MADE A LITTLE BIT OF PROGRESS ON THAT ONE.

16     WHAT'S YOUR RESPONSE?

17     DID YOU FINISH?  I'M SORRY.

18         **MR. SMITH:**  I AM FINISHED.  YOUR HONOR.

19         **THE COURT:**  YES.

20     MR. HOSIE?

21         **MR. HOSIE:**  THANK YOU.

22         **THE COURT:**  PRETTY PERSUASIVE ON THE PRIOR ART, I

23  WOULD THINK, BECAUSE IT SOUNDS LIKE A SLIGHTLY DIFFERENT

24  INVENTION THAN THE ONE WE WERE TALKING ABOUT BEFORE.

25         **MR. HOSIE:**  LET ME START WITH THE PRIOR ART, YOUR

1    HONOR.  PROSECUTION HISTORY DISCLAIMER.  YOU KNOW, HERE'S HOW

2    IT SHOULD WORK.

3        SO IF THE PRIOR ART HAD A SEARCH SESSION THAT WAS

4    ASYNCHRONOUS AND WORKED JUST LIKE OUR SYSTEM DID, AND IF THE

5    PROSECUTION COUNSEL FOR MASTEROBJECTS CAME IN AND SAID:

6            "LOOK, IT'S THE SAME EXCEPT IN OUR SITUATION WE'RE

7            KEEPING THIS DEEP CLIENT HISTORY SO WE KNOW WHAT YOU DID

8            LAST WEEK AND LAST MONTH. SO IF YOU LOOKED AT THE WEATHER

9            IN SUNNYVALE A MONTH AGO WE MIGHT BE ABLE TO PUSH A NEW

10           UPDATE FOR SUNNYVALE WEATHER TO YOU TODAY."

11       IF WE DISTINGUISHED THE PRIOR ART BY SAYING:

12           "THEY DO THIS, AND WE DON'T.  WE'RE DIFFERENT.  WE

13           USE 'SESSION' IN A DIFFERENT WAY," THAT WOULD BE A CLEAR

14   DISAVOWAL OF CLAIM SCOPE.

15       THAT IS NOT WHAT HAPPENED. PURCELL IS A BLAST. IT SENDS

16   ONE MESSAGE TO MULTIPLE DIFFERENT SYSTEMS, NOT SERVERS, BUT

17   SYSTEMS. AND WE DISTINGUISH IT ON THAT BASIS.  IT WASN'T A

18   SEARCH SESSION WHERE YOU SAT DOWN AND WENT BACK AND FORTH.

19       IN TERMS OF A SERVER, THE PATENT SPECIFICATION ROUTINELY

20   TALKS ABOUT A PLURALITY OF SERVERS AS AN EXAMPLE. YOU KNOW, ALL

21   THESE SYSTEMS CAN USE ONE OR MORE SERVERS.

22           **THE COURT:**  WHAT ABOUT THE ISSUE OF SESSIONLESS IN

23   THAT PREVIOUS PRIOR ART?  APPARENTLY THERE WAS A DISAVOWAL OF

24   "SESSION" AND YOU CLAIM SESSIONLESS.

25           **MR. HOSIE:**  BECAUSE -- YES, BECAUSE I THINK WHAT THEY

1    MEANT THERE WAS THERE WAS NO SEARCH SESSION WHERE YOU WERE

2    SITTING DOWN WITH ONE SYSTEM AND GOING A, THEN B, THEN C, THEN

3    D.  IT WASN'T A SEARCH SESSION.

4         AND THE MASTEROBJECTS PATENT IS ALL ABOUT A SEARCH

5    SESSION:  SITTING DOWN, TYPING IN CONSECUTIVE QUERIES, GETTING

6    CONSECUTIVE INFORMATION WITHIN THE CONFINES OF THE SEARCH

7    SESSION.

8         THAT'S WHAT WE MEANT BY "SESSION." WE NEVER MEANT

9    MAINTAINING SOME HISTORICAL LOG OF WHAT YOU'VE LOOKED AT FOR

10   TIME IMMEMORIAL, AND THEN USING THAT DEEP RICH DATABASE TO FORM

11   YOUR SEARCH SYSTEM.

12        NOTHING WORKS LIKE THAT. NOTHING IN YAHOO!'S SYSTEM WORKS

13   LIKE THAT.  YOU KNOW, THAT'S NOT HOW THIS PATENT WAS DESCRIBED.

14        **THE COURT:**  ALL RIGHT.

15        DO YOU WANT TO RESPOND AT ALL?

16        **MR. SMITH:**  THE ONLY THING I WOULD ADD, YOUR HONOR,

17   IS YAHOO!'S CONSTRUCTION DOESN'T REQUIRE THIS IDEA OF A DEEP

18   MONTH LONG OR LIFETIME USER HISTORY.  IT JUST REQUIRES IT TO

19   LOOK TO SOME USER HISTORY.  AND SO I WOULD SUBMIT MR. HOSIE'S

20   DISTINCTION IS FALSE.

21        **THE COURT:**  ALL RIGHT.  WELL, LET'S GO TO NUMBER

22   SEVEN, THEN, WHERE PARTIES HAVE GIVEN NO HELP TO THE COURT. I

23   MEAN, I'M NOT SAYING THAT CRITICALLY, BUT ONE SIDE IS SAYING

24   THAT THIS IS INDEFINITE.  THE TERM "INCREASINGLY APPROPRIATE

25   CONTENT OF SEARCH CRITERIA," THAT TERM, IT APPEARS IN SOME OF

1    THE CLAIMS.

2        AND MASTEROBJECTS IS SAYING THAT THIS TERM SHOULD BE GIVEN

3    ITS PLAIN MEANING, WHATEVER THAT MEANS.

4        YAHOO! SAYS:

5            "NO, IT'S NOT AMENABLE TO CONSTRUCTION.  AND THE

6            CLAIMS CONTAINED ARE MORE NARROW AND INDEFINITE."

7        SO THE QUESTION REALLY IS AS A MATTER OF LAW -- AND

8    THERE'S CASES ALL OVER THE LOT, WHICH THERE SEEMS TO BE ON ALL

9    THESE POINTS -- YOU KNOW, WHY SHOULD THE COURT ADDRESS THE

10   QUESTION OF INDEFINITENESS AT THE MARKMAN PROCEEDING AND NOT AT

11   SUMMARY JUDGMENT?

12       **MR. HOSIE:**  AND, YOUR HONOR, FROM THE PLAINTIFF'S

13   PERSPECTIVE IT SHOULD NOT AND YOU CANNOT BECAUSE IT TURNS ON

14   EXPERT TESTIMONY WHICH WE HAVE NONE. THAT'S WHY IT'S --

15       **THE COURT:**  WELL, IT CAN AS A MATTER OF LAW, JUST NOT

16   ON THIS RECORD, YOU'RE SAYING.

17       **MR. HOSIE:**  YES.  JUST ON THIS RECORD, YOUR HONOR.

18       **THE COURT:**  ALL RIGHT.

19       **MR. HOSIE:**  I MEAN, IT'S A SEPARATE FIGHT.  YOU HAVE

20   TO HAVE EXPERTS WEIGH IN, BECAUSE THE TEST IS:  CAN AN EXPERT

21   READ THIS AND SAY:

22           "YES.  GIVEN THE STATE OF THE ART AT THE TIME THIS IS

23           INSOLUBLE OF CONSTRUCTION BY CLEAR AND CONVINCING

24           EVIDENCE."

25       AND SO, YOU KNOW, IT VERY OFTEN INVOLVES A BATTLE OF THE

1    EXPERTS. AND THAT'S WHY TYPICALLY -- AT LEAST IN MY

2    EXPERIENCE -- COURTS IN THIS JURISDICTION AND ELSEWHERE DEFER

3    TO SUMMARY JUDGMENT. IT'S NOT APPROPRIATE.

4          **THE COURT:** BUT ARE WE DEFERRING? LET'S PUT THAT

5    ISSUE ASIDE. MASTEROBJECTS ARGUES THAT THE TERMS SHOULD BE

6    GIVEN THEIR PLAIN MEANING. WHEN ARE WE -- THEY ARE

7    OBVIOUSLY -- YOU KNOW, YAHOO! DOESN'T AGREE WITH THAT. WHEN

8    WILL WE FIGHT THIS BATTLE OF WHAT THOSE -- YOU SAY THAT, BUT I

9    MEAN WHAT SUPPORTS THIS THAT THERE IS A PLAIN MEANING AND WE

10    SHOULD GIVE IT THAT PLAIN MEANING?

11        IN OTHER WORDS, IF I'M WRITING A JURY INSTRUCTION --

12          **MR. HOSIE:** YES.

13          **THE COURT:** -- DO I SAY:

14        "OH, JURY, USE THE PLAIN MEANING OF 'INCREASINGLY

15       APPROPRIATE CONTENT FOR SEARCH CRITERIA,'" AND THEY ARE

16    GOING TO HAVE A BLANK STARE.

17          **MR. HOSIE:** THE COURT WOULD LOOK AT THE SPECIFICATION

18    THAT HAS EXAMPLE AFTER EXAMPLE OF SOMEBODY TYPING IN AN

19    INCREASINGLY LENGTHY QUERY AND GETTING BACK INCREASINGLY

20    RELEVANT RESPONSE.

21        MADISON SQUARE GARDEN. YOU'RE NOT LOOKING FOR DOLLY

22    MADISON. YOU'RE NOT LOOKING FOR MADONNA. YOU'RE LOOKING FOR

23    MADISON SQUARE GARDEN.

24        AND THE SPECIFICATION GOES OVER THAT AGAIN AND AGAIN AND

25    AGAIN. AS YOU TYPE MORE STUFF IN, THE SYSTEM GIVES YOU STUFF

1   THAT IS CLOSER TO WHAT YOU'RE LOOKING FOR.  IT'S INCREASINGLY

2   RELEVANT.

3        AND I DON'T THINK THERE IS AN EXPERT WHO COULD LOOK AT THE

4   SPECIFICATION AND NOT UNDERSTAND WHAT THAT MEANT.

5             **THE COURT:**  ALL RIGHT.

6             **MR. SMITH:**  THIS IS ANOTHER TERM THAT I WOULD LIKE MY

7   ASSOCIATE TO ARGUE, IF THAT'S ALL RIGHT.

8             **THE COURT:**  FINE.  GIVE HIM THE HARD ONES.

9             **MR. SMITH:**  I DID, YOUR HONOR.  IT'S GOOD TRAINING.

10            **MR. CANNON:**  AND, YOUR HONOR, I DON'T THINK COUNSEL

11  FOR MASTEROBJECTS WOULD DISPUTE THAT THE COURT DOES HAVE THE

12  DISCRETION TO ADDRESS THE INDEFINITENESS ISSUE.

13            **THE COURT:**  RIGHT.  HE'S ARGUED THAT THIS RECORD

14  DOESN'T REALLY SUPPORT -- DOESN'T GIVE -- THAT ISSUE IS NOT

15  PRESENTED ON THIS RECORD.

16            **MR. CANNON:**  AND THE PROBLEM IS I THINK EXACTLY WHAT

17  THE COURT IDENTIFIED, NAMELY THAT WE DON'T KNOW WHAT ELSE WOULD

18  NEED TO BE ADDED TO THE RECORD IN ORDER TO ADDRESS THIS ISSUE.

19       WE'RE TALKING ABOUT TERMS LIKE "RELEVANT" AND

20  "APPROPRIATE" WHICH ARE ORDINARY WORDS THAT DON'T HAVE ANY

21  PARTICULAR MEANING WITHIN THE COMPUTER SCIENCE COMMUNITIES SUCH

22  THAT EXPERT TESTIMONY, FOR EXAMPLE, IS UNLIKELY TO SHED ANY

23  MEANING ON WHAT THOSE TERMS WOULD MEAN.  AND THERE'S SIMPLY NO

24  OBJECTIVE YARDSTICK GIVEN IN THE SPECIFICATION OF ANY OF THE

25  MASTEROBJECTS PATENTS.

1          **THE COURT:**  RIGHT.  BUT BOTH SIDES ARE LIKE TWO SHIPS

2    PASSING IN THE NIGHT, BECAUSE MASTEROBJECTS SAYS:

3          "WELL, IT'S AN OBVIOUS TERM IN THE CONTEXT OF THE

4          ENTIRE CLAIM AND THE SPECIFICATIONS.  IT JUST MEANS

5          INCREASINGLY RELEVANT OR INCREASINGLY RESPONSIVE TO WHAT

6          THE USER IS LOOKING FOR, AND THAT CAN BE READILY

7          UNDERSTOOD."

8          AND BECAUSE IT CAN BE READILY UNDERSTOOD, IF YOU ARE

9    SAYING THAT THIS RECORD CAN SUPPORT A FINDING OF INDEFINITENESS

10   WHAT IN THE RECORD WOULD IMPEL THE COURT TO MAKE THAT FINDING?

11         **MR. CANNON:**  AND THE PROBLEM IS AS MASTEROBJECTS HAS

12   ARGUED IN ITS BRIEFING, THAT IN ORDER TO KNOW WHAT CONSTITUTES

13   A RELEVANT RESPONSE OR AN APPROPRIATE RESPONSE THEY MAKE

14   ASSUMPTIONS ABOUT WHAT IT IS THE USER IS SITTING DOWN TO LOOK

15   FOR.  SO A USER WHO TYPES "MADISON SQUARE GARDEN," YOU ASSUME

16   THAT USER IS LOOKING FOR INFORMATION ABOUT THE MADISON SQUARE

17   GARDEN FACILITY AS OPPOSED TO, SAY, A KNICKS GAME THAT WAS

18   PLAYED THERE TEN YEARS AGO.

19         AND THAT'S A RELATIVELY EASY EXAMPLE.  THERE ARE MANY

20   OTHER QUERIES WHERE EVEN IF AFTER YOU'VE TYPED THE FULL LENGTH

21   OF THE STRING THE SYSTEM HAS NO WAY OF GAGING THE RELEVANCE OF

22   THE RESPONSE.

23         THERE'S A CLASSIC EXAMPLE.  IN THE COMPUTER SCIENCE

24   LITERATURE, THERE'S A PROFESSOR OF COMPUTER SCIENCE NAMED

25   "MICHAEL JORDAN."

1      CLEARLY, WHEN PEOPLE SIT DOWN AND TYPE IN "MICHAEL JORDAN"

2   THE SYSTEM HAS NO WAY OF KNOWING WHETHER THEY ARE LOOKING FOR

3   INFORMATION FOR A FAMOUS BULLS BASKETBALL PLAYER OR THEY ARE

4   LOOKING FOR INFORMATION ABOUT THE COMPUTER SCIENCE PROFESSOR.

5      AND THERE'S NOTHING --

6          **THE COURT:**  I GUESS THE QUESTION THEN IS -- MAYBE

7   THIS IS MAKING IT MORE COMPLICATED -- IS THE TERM "APPROPRIATE"

8    A SUBJECTIVE OR AN OBJECTIVE STANDARD?

9      IN YOUR HYPOTHETICAL, AS THEY GOT -- AS THE COMPUTER

10  STARTING GIVING YOU MORE AND MORE INFORMATION ABOUT THIS

11  COMPUTER SCIENTIST, IT WOULD BE APPROPRIATE TO THE INQUIRY.  IT

12  MIGHT NOT BE APPROPRIATE TO WHAT THE USER OR THE CLIENT WAS

13  INTENDING.

14      SO IS IT AN OBJECTIVE STANDARD, OR IS IT A SUBJECTIVE

15  STANDARD, MEANING THE TERM "APPROPRIATE"?

16          **MR. CANNON:**  THE TERM "APPROPRIATE" IS A SUBJECTIVE

17  STANDARD.  IN EVERY EXAMPLE THAT COUNSEL HAS REVIEWED, YOU

18  START WITH THE ASSUMPTION THAT YOU KNOW WHAT THE USER IS

19  LOOKING FOR.  IT'S THAT USER'S SUBJECTIVE UNDERSTANDING OF

20  THEIR INTENT WITH THE SEARCH THAT'S THE ONLY CRITERION FOR

21  RELEVANCE.

22      THE CLAIM ISN'T WRITTEN FOR MATCHES OR RETURNS NARROWER

23  RESULTS. IT'S RELEVANT OR APPROPRIATE. AND THOSE ARE SUBJECTIVE

24  TERMS.

25          **THE COURT:**  DO YOU AGREE WITH THAT?

1          **MR. HOSIE:**  I AGREE IT'S SUBJECTIVE.  BUT FROM WHOSE

2  PERSPECTIVE?  FROM THE PERSPECTIVE OF THE USER.  THE USER KNOWS

3  WHAT THE USER IS LOOKING FOR.  IF I'M LOOKING FOR MICHAEL

4  JORDAN, THE COMPUTER SCIENTIST, I WILL TYPE IN "MICHAEL JORDAN,

5  COMPUT" AND I WILL GET MICHAEL JORDAN, THE COMPUTER SCIENTIST.

6          THE MORE I TYPE, THE MORE RESPONSIVE, THE MORE ACCURATE

7  THE INFORMATION.  THAT'S CLEARLY SET FORTH IN THE

8  SPECIFICATION.

9          AGAIN, I DON'T THINK AN EXPERT IN FAIRNESS COULD LOOK AT

10 THIS AND SAY:

11          "THIS IS INSOLUBLE OF CONSTRUCTION."

12      I WILL ENJOY THAT DEPOSITION, YOUR HONOR.

13          **THE COURT:**  ALL RIGHT.  ANYTHING FURTHER ON THIS

14 POINT?

15          **MR. CANNON:**  NOTHING FURTHER, YOUR HONOR.

16          **THE COURT:**  MR. HOSIE?

17          **MR. HOSIE:**  NOTHING FURTHER.

18          **THE COURT:**  ALL RIGHT.  I APPRECIATE THE PARTIES --

19          **MR. HOSIE:**  SUBMITTED.  APPRECIATE YOUR PATIENCE.

20          **THE COURT:**  THE MATTER IS SUBMITTED, AND I APPRECIATE

21 THE INPUT. IT'S VERY, VERY HELPFUL.

22      AND COURT HAS ITS WORK CUT OUT FOR IT.

23      THIS IS EXCELLENT ARGUMENT ON BOTH SIDES, AND YOU MIGHT

24 EVEN HAVE A FUTURE IN THIS BUSINESS.

25          **MR. CANNON:**  THANK YOU, YOUR HONOR.

1          **MR. SMITH:**  THANK YOU, YOUR HONOR.

2          **MR. HOSIE:**  THANK YOU, YOUR HONOR.

3

4                    (THEREUPON, THIS HEARING WAS CONCLUDED.)

5

6     STENOGRAPHY CERTIFICATION

7               "I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
      FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
8               /S/ KATHERINE WYATT
                DATE AUGUST 20, 2012
9               KATHERINE WYATT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25